UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C.   20580<br>                              Plaintiff,<br><br>                    v.<br><br>**GRACO INC.,**<br>88 11th Avenue Northeast<br>Minneapolis, MN   55413<br><br>**ILLINOIS TOOL WORKS INC.,** and<br>**ITW FINISHING LLC,**<br>3600 West Lake Avenue<br>Glenview, IL   60026<br>                              Defendants | Civil Case No. ____ - _____ (___)<br><br>**REDACTED PUBLIC VERSION** |

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION PURSUANT TO
SECTION 13(b) OF THE FEDERAL TRADE COMMISSION ACT**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), by its designated

attorneys, petitions the Court, pursuant to Section 13(b) of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. § 53(b), and Section 16 of the Clayton Act, 15 U.S.C. § 26, for a

temporary restraining order and preliminary injunction enjoining Defendants Graco Inc., Illinois

Tool Works Inc., and ITW Finishing LLC ("ITW"), including their domestic and foreign agents,

divisions, parents, subsidiaries, affiliates, partnerships, or joint ventures, from taking any steps

toward combining or acquiring any stock, assets, or other interest of one another, either directly

or indirectly.   Plaintiff requires the aid of this Court to maintain the status quo during the

pendency of an administrative proceeding that the Commission has already initiated pursuant to

Section 5 of the FTC Act, 15 U.S.C. § 45, and Section 7 of the Clayton Act, 15 U.S.C. § 18.

The ongoing administrative proceeding will determine the legality of the acquisition, subject to judicial review by a federal Court of Appeals, and will provide a forum for all parties to conduct full discovery and present evidence regarding the likely effects of the acquisition.

### NATURE OF THE CASE

1.     Graco's proposed acquisition of ITW, its largest and most significant competitor, threatens to harm competition for certain industrial liquid finishing equipment in North America and lead to higher prices for North American distributors and end users already struggling in today's economic environment.   Finishing is the application by end-user customers of coatings, such as paint or varnish, to all kinds of metal, plastic, or wood products that they manufacture. Describing the deal, Graco's CEO told his Board of Directors that the ITW finishing companies were ███████████████████████████████████████████████████████ █████████████████   Without temporary and preliminary injunctive relief from this Court, Defendants may merge after December 17, 2011.

2.     Graco and ITW are the two dominant manufacturers of liquid finishing equipment for industrial use in North America.   The acquisition would combine Graco's ██████████ ████████ with its leading competitor and eliminate the close competition ITW imposes on Graco's liquid finishing business.   As described in the 2010 U.S. Department of Justice and Federal Trade Commission Horizontal Merger Guidelines ("Merger Guidelines"), the loss of this close direct competition is likely in and of itself to lead to anticompetitive effects.   After the acquisition, Graco will no longer need to effectively discount on sales to distributors to compete with ITW and will have less incentive to develop new and better products.   Because competition

2

for sales to distributors will lessen, end use industrial manufacturers may pay higher prices for industrial liquid finishing equipment.

3.      Post-acquisition, Graco will control well over ▮▮ of the sales of all liquid finishing equipment for industrial use in North America.   Graco and ITW are the dominant suppliers of certain industrial liquid finishing equipment in North America.   Exel North America ("Exel") is a distant third.

4.      Under the relevant case law and the Merger Guidelines, the extraordinarily high post-acquisition concentration levels render the acquisition presumptively unlawful in relevant markets within the product categories of pumps, spray guns, and proportioners for industrial use, in which Graco and ITW compete for the sale of industrial liquid finishing equipment to distributors (value-added resellers) for resale.

5.      Evidence from the parties, distributors, and other industry participants confirms this strong presumption of illegality.   Because Exel and other niche manufacturers lack Graco's and ITW's installed base, brand acceptance, and access to quality North American distribution which can furnish some end users with service and replacement parts, no existing competitors can or would constrain Graco post-acquisition from imposing price increases on industrial liquid finishing equipment.   As one industrial end user commented to ITW, ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮

6.      Effective expansion or entry into the manufacture and sale in each relevant industrial liquid finishing equipment market in North America is unlikely in response to an anticompetitive price increase, due to significant entry barriers.   In a recent presentation prepared

for its Board of Directors, Graco identified ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Repositioning or expansion by existing smaller

competitors is unlikely without access to capable local distributors to sell and service finishing

equipment for industrial end users.   Indeed, Graco believes ████████████████████

████████████████████████████████████ Defendants have

advanced no credible, cognizable efficiencies to justify the acquisition, especially given the

extremely high post-acquisition concentration and the loss of close competition between Graco

and ITW.   Indeed, Graco's stated plan is to operate the two liquid finishing equipment businesses

as separate standalone operations, only now under the common control of a single firm.

7.      Temporary and preliminary injunctive relief is imperative to preserve the status

quo and protect competition during the Commission's ongoing administrative proceeding.   This

temporary relief is warranted as long as the FTC raises "questions going to the merits so serious,

substantial, difficult and doubtful as to make them fair ground for thorough investigation, study,

deliberation and determination by the [FTC] in the first instance, and ultimately by the Court of

Appeals."   Thus, the Court in this matter "is not called upon to reach a final determination on the

antitrust issues."   Instead, the "one purpose of a proceeding under Section 13(b) is to preserve the

status quo until the FTC can perform its function."   Allowing Graco and ITW to merge during

the administrative proceeding would harm consumers and undermine the Commission's ability to

remedy the anticompetitive effects of the transaction.   If Defendants consummate the proposed

acquisition, it would combine the two most significant competitors selling these products in North America, leaving a very distant new second-place firm along with a handful of fringe competitors. The administrative complaint issued by the Commission on December 15, 2011, alleges that this acquisition would result in higher prices, declining product quality, and reduced competition from fringe competitors. The Commission has scheduled a hearing on the merits of the acquisition before an FTC Administrative Law Judge to begin on May 15, 2012.

## JURISDICTION AND VENUE

8.      Jurisdiction is based on Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 16 of the Clayton Act, 15 U.S.C. § 26, and under 28 U.S.C. §§ 1331, 1337, and 1345. This is a civil action arising under Acts of Congress protecting trade and commerce against restraints and monopolies, brought by an agency of the United States authorized by an Act of Congress to bring this action.

9.      Venue is proper under 15 U.S.C. §§ 22 and 53(b), and 28 U.S.C. § 1391(b) and (c), as both Graco and ITW transact business in the District of Columbia.

## THE PARTIES

10.      Plaintiff, the Commission, is an administrative agency of the United States Government established, organized, and existing pursuant to the FTC Act, 15 U.S.C. §§ 41 *et seq.*, with its principal offices at 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580. The Commission has the authority and responsibility to enforce, among other things, Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the FTC Act, 15 U.S.C. § 45.

11.      Defendant Graco Inc. is a for-profit corporation, existing and doing business under and by virtue of the laws of the state of Minnesota, with its office and principal place of business

5

located at 88 11th Avenue Northeast, Minneapolis, Minnesota 55413.   Graco Inc. wholly owns

Graco.

12.     Defendant Illinois Tool Works Inc. is a for-profit corporation, existing and doing

business under and by virtue of the laws of the state of Delaware, with its office and principal

place of business located at 3600 West Lake Avenue, Glenview, Illinois 60026.   Illinois Tool

Works wholly owns Defendant ITW Finishing LLC.

13.     Defendant ITW Finishing LLC is a for-profit limited liability company, existing

and doing business under and by virtue of the laws of the state of Delaware, with its office and

principal place of business located at 3600 West Lake Avenue, Glenview, Illinois 60026.

14.     Graco, ITW, and their relevant operating subsidiaries are, and at all relevant times

have been, engaged in activities in or affecting "commerce" as defined in Section 4 of the FTC

Act, 15 U.S.C. § 44, and Section 1 of the Clayton Act, 15 U.S.C. § 12.

## SECTION 13(b) OF THE FTC ACT

15.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), provides in pertinent part:

(b)     Whenever the Commission has reason to believe

(1) that any person, partnership, or corporation is violating, or is about to
violate, any provision of law enforced by the Federal Trade Commission, and

(2) that the enjoining thereof pending the issuance of a complaint by the
Commission and until such complaint is dismissed by the Commission or set aside
by the court on review, or until the order of the Commission made thereon has
become final, would be in the interest of the public the Commission by any of its
attorneys designated by it for such purpose may bring suit in a district court of the
United States to enjoin any such act or practice.   Upon a proper showing that,
weighing the equities and considering the Commission's likelihood of ultimate
success, such action would be in the public interest, and after notice to the
defendant, a temporary restraining order or a preliminary injunction may be
granted without bond. . . .

## THE ACQUISITION

16.     Pursuant to an Asset Purchase Agreement dated April 14, 2011, Graco proposes to

acquire certain assets and equity interests from Illinois Tool Works and ITW for $650 million.

The transaction would create an entity with annual sales exceeding $1 billion.   Defendants Graco

and ITW have combined North American liquid finishing equipment sales exceeding ███

███

17.     Pursuant to the Hart-Scott-Rodino Antitrust Improvements Act, 15 U.S.C. § 18a,

and a timing agreement between Defendants and the FTC staff, unless restrained or enjoined by

this Court, Defendants may consummate the transaction after December 17, 2011.

18.     On December 15, 2011, the Commission unanimously authorized commencement

of this action under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to seek a temporary

restraining order and preliminary injunction barring the acquisition until the resolution of the

administrative proceeding that was commenced by the Commission on the same day, pursuant to

Section 11(b) of the Clayton Act, 15 U.S.C. § 21(b), and Section 5 of the FTC Act, 15 U.S.C.

§ 45.   The legality of the acquisition agreement under Section 5 of the FTC Act, the legality of

the acquisition itself under Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the FTC

Act, and the appropriate remedy in the event liability is found will be determined by the

Commission through an administrative proceeding and will be subject to judicial review.

19.     In authorizing the commencement of this action, the Commission determined that

it has reason to believe that (1) acquisition agreement constitutes an unfair method of competition

in violation of Section 5 of the FTC Act and (2) the acquisition would violate Section 7 of the

Clayton Act and Section 5 of the FTC Act because the acquisition may substantially lessen

competition and/or tend to create a monopoly in one or more lines of commerce, and (3) it will promote the public interest for this Court to enjoin the transaction pending the resolution of the Commission's administrative proceedings, and any appeals, so as to minimize the potential harm to customers and preserve the Commission's ability to grant an adequate remedy if it concludes, after the hearing, that the acquisition is unlawful.

## AFFECTED MARKETS

20.    Industrial manufacturers, the end users of the products at issue, use liquid finishing equipment to apply paint and other coatings to all kinds of finished goods, including automobiles, office furniture, and home appliances.   Almost every surface requires a finish, whether for aesthetic value, surface protection, or other purposes.   These traits are often the very things that make a customer choose one product over another.   Applying a consistent finish is a critical part of the manufacturing process, because any disruption in the finishing process could impede the entire manufacturing process.   Manufacturers require reliable, proven finishing equipment and local service that is available whenever a problem arises, day or night.

21.    Graco and ITW manufacture and sell liquid finishing equipment for use in industrial settings.   This equipment includes pumps, applicators (spray guns), plural component equipment (proportioners), and related equipment used in industrial paint systems.   The equipment is durable, with a significant follow-on parts and service business associated with each system or component sale.   Pumps, spray guns, proportioners, and the spare parts associated with these components account for the vast majority of the North American industrial liquid finishing equipment sales of both firms.   Defendants sell these products throughout North America.

22.    Liquid finishing equipment manufacturers, including Graco and ITW, sell their products predominantly to independent, highly specialized distributors, who purchase the vast majority of liquid finishing equipment for resale.   Distributors provide a total liquid finishing solution—a value-added bundle of goods and services to meet each end user's needs, which can include system design, engineering, installation, product training, equipment customization, maintenance, and repair.   The initial sale of equipment typically results in additional spare and replacement parts and accessories business for the distributor.   Aftermarket sales often comprise the majority of a distributor's business.   The aftermarket business most typically involves Graco and ITW parts because they have the largest installed bases of equipment.

23.    Access to quality distributors appears to be the most cost-effective way to channel local pull-through demand for industrial liquid finishing equipment.   All industrial liquid finishing equipment manufacturers sell predominantly through distribution.   Graco sells all of its industrial liquid finishing equipment to distributors.   ITW sells the vast majority of its industrial liquid finishing equipment to distributors.

24.    Graco and ITW compete directly on price and product innovation.   Graco and ITW compete on price by offering reduced prices to their distributors in the form of volume discounts, payment of commissions to distributors for "switching" an end user, and other promotions on the sale of their equipment.   Graco and ITW also compete on innovation, often developing new products to match offerings of the other firm.

25.    Graco and ITW are the largest suppliers of pumps, spray guns, and proportioners, and are close or the closest competitors in each category of products that are the subject of this complaint.   When Graco and ITW win a competitive sale, they displace each other's products

9

more often than anyone else's.   To grow share in a mature industry, a manufacturer must displace

competitive product.   ████████████████████████████████

████████████████████████████████████████████████

████████████████

     26.     Post-acquisition, distributors and industrial manufacturers will have no recourse to

curb the loss of this competition.   ████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

     27.     Other firms will not grow or expand to replace the loss of this competition,

especially for installed base sales.   Without a network of well-financed, capable distributors who

can quickly furnish service and replacement parts to end users, firms cannot expect to penetrate

these markets significantly.   Fringe competitors lack the installed base to attract significant local

distribution.   Moreover, without a large installed base, new entrants will be unable to find

adequate distribution.   After the acquisition, most of the top North American distributors would

not switch from Graco to carry or promote fringe competitors or new entrants.   Distributors

depend heavily on Graco and ITW for their business, fear retaliation from Graco if they carry

other brands, and believe that their end users would not to embrace unfamiliar brands lacking

long-term marketplace reliability and manufacturer credibility.   The acquisition will exacerbate

the already substantial entry barriers presented by the limited pool of quality distributors with a substantial percentage of installed base sales opportunities, generally unavailable to less-established brands of industrial liquid finishing equipment.

28.     Graco's large installed base in end user plants makes it extremely difficult for competitors to expand their market presence.   Only ITW has managed to retain significant and growing market presense, often at Graco's expense.

29.     ████████████████████████████████████████████████

████████████████████████████████████████████

Post-acquisition, Graco's distributors will not risk their Graco volume discounts, promotional programs, and their Graco component and aftermarket sales by promoting other manufacturers' products.   Graco will be able to realize even greater percentage price increases over cost increases than they do today.

30.     Graco and ITW have the largest installed base of equipment sold to end users and the largest share of distributor sales and distributor loyalty.   Graco and ITW have an advantage over other industrial liquid finishing equipment manufacturers when ████████████ to attract and maintain distributors to push end user sales.

31.     The transaction would eliminate both price and non-price competition between Graco and ITW for distributors and end users and enhance the merged entity's market power.

**Relevant Product Markets**

32.     From this evidence of anticompetitive effects, one can infer that certain of the products discussed below satisfy the hypothetical monopolist test used to identify relevant markets.   Defendants' business documents track their sales by the following categories of equipment.

33.     The relevant product markets that would be affected by the transaction are no broader than the manufacture and sale of:

      a.   liquid finishing pumps for industrial use;

      b.   liquid finishing applicators (spray guns) for industrial use;

      c.   liquid finishing plural component equipment (proportioners) for industrial use;

      d.   circulation pumps for paint systems used in automotive assembly plants; and

      e.   industrial liquid finishing equipment for resale.

**Liquid Finishing Pumps for Industrial Use**

34.     Industrial liquid finishing pumps transfer, distribute, or circulate paints and finishing liquids at a regulated pressure, flow rate, and temperature.   A liquid finishing system requires one or more pumps, depending on the scale of the finishing operation.   Liquid finishing pumps encompass a variety of technologies (e.g., piston, centrifugal, double diaphragm, and rotary lobe), powered by different means (i.e., electric, hydraulic, and pneumatic), and operating at different pressures and flow rates.   Brand reputation, a loyal installed base of end users, and the importance of quality distribution that can quickly service and/or replace those pumps are the key competitive dynamics for all industrial liquid finishing pumps.

### Liquid Finishing Spray Guns for Industrial Use

35.     Industrial liquid finishing spray guns are specialized equipment used to apply paint and other liquid coatings to a surface.   Spray guns encompass a range of designs, such as airless guns, air-assisted airless guns, and manual electrostatic guns, and several relevant product markets may exist within the overall spray gun market.   Although end users' demands are varied and specific, and a gun appropriate for one use will not always substitute for a spray gun used in a different setting, brand reputation, a loyal installed base of end users, and the importance of quality distribution that can quickly service and/or replace those spray guns are the key common competitive dynamics for all industrial liquid finishing spray guns.

### Liquid Finishing Proportioners for Industrial Use

36.     Plural-component equipment (proportioners) mix paint and other liquids in ratios before application to a product.   Proportioners can handle multiple colors and catalysts and offer some flexibility in configuration.   Brand reputation, a loyal installed base of end users, and the importance of quality distribution that can quickly service and/or replace those proportioners are the key competitive dynamics for all industrial liquid finishing proportioners.

### Circulation Pumps for Paint Systems in Automotive Assembly Plants

37.     Paint circulation pumps used in automotive paint circulation systems are specialized equipment designed to circulate automotive paint and other liquid finishes to various points along an assembly line.   Auto manufacturers are highly sensitive to finish quality and production costs.   Automakers and automotive suppliers consider electric piston circulation pumps superior to other pump technologies in reliability and efficiency.   Automakers generally

13

preapprove liquid finishing equipment manufacturers' pumps for use in automotive assembly plants; this approval can take two years or longer.

### Industrial Liquid Finishing Equipment for Resale

38.     Manufacturers of liquid finishing equipment for industrial use rely predominantly on independent distributors to purchase equipment for resale with a variety of value-added services and equipment that end users demand.   End users require immediate turnaround on service, sales, engineering, and support.   Manufacturers best supply these services, especially to their installed base, throughout North America using local distribution.   Industrial liquid finishing equipment manufacturers compete to provide the broadest set of products at the lowest delivered price, with prompt equipment delivery and service to the best resellers.

### GEOGRAPHIC MARKET

39.     A relevant geographic market in which to analyze the effects of the proposed acquisition is North America because of the high entry hurdles and entry barriers presented by the parties' large installed bases and the end use customers' need for immediate service and/or repair or replacement of liquid finishing equipment.   Distributors are largely bound to source liquid finishing equipment in North America in order to be able to provide the service and support their end users require.   Only industrial liquid finishing equipment manufacturers with a large installed base and sales staff in North America can profitably support this network of distribution. The importance of the installed base and local distribution means that overseas manufacturers with limited sales in North America will lack the economic incentive or ability to expand their North American sales.

## PRESUMPTIVE ILLEGALITY OF THE ACQUISITION

40.     The acquisition will eliminate both price and non-price competition between Graco and ITW and increase the merged entity's market power, making it illegal.   No countervailing benefits exist.

41.     The acquisition's effect on concentration renders it presumptively illegal.   Graco and ITW are the two most significant competitors providing pumps, spray guns, and proportioners for industrial use in North America.   Other manufacturers are fringe competitors with small North American sales and lack the ability to reposition or expand in a manner sufficient to ameliorate the anticompetitive effects of the transaction.

42.     Graco and ITW are the only providers currently supplying circulation pumps for use in automotive paint circulation systems, making this acquisition a de facto merger to monopoly for new sales in this market.

43.     Graco and ITW are the only providers effectively able to compete for the most capable distributors because of their broad liquid finishing equipment lines, large installed bases, and strong reputations for quality with end users.   Other competitors with small North American sales, for the reasons previously stated, lack the economic incentives or ability to reposition or expand in a manner sufficient to ameliorate the reduced price competition resulting from the transaction.

44.     Each relevant product market is already highly concentrated, and the proposed acquisition would further increase concentration to presumptively anticompetitive levels under the relevant case law and the Merger Guidelines.

## ENTRY AND REPOSITIONING BARRIERS
## AND LACK OF EFFICIENCIES

45.     Substantial and effective entry, repositioning, or fringe firm growth sufficient to deter or counteract the anticompetitive effects of the proposed acquisition is unlikely.   This is because of the high entry hurdles and barriers that need to be overcome, which include, but are not limited to, the substantial time and expense to develop and market a sufficiently extensive product line to satisfy diverse end users' needs, establish marketplace credibility, build an installed base of end users, and develop an adequate distribution network.

46.     The most significant entry hurdles and barriers are reputation, installed base, and, connected to this, finding adequate distribution that can supply prompt service and/or repair or replace the equipment of the installed base.   These factors present significant obstacles to expansion or repositioning by existing fringe competitors, as well as de novo entry.

47.     █████████████████████████████████████████████████████ The difficult entry hurdles and barriers have enabled Graco to raise prices annually and to realize increased profits.   ITW is the most significant constraint on Graco's ability to raise prices even further, a constraint that this transaction will eliminate.

48.     Extraordinary efficiencies specific to the transaction are necessary to justify the acquisition in light of high concentration and high potential to harm competition.   Graco has no plans to integrate ITW's business or products with Graco.   Any manufacturing synergies are unlikely for at least five years.

## LIKELIHOOD OF SUCCESS ON THE MERITS,
## BALANCE OF EQUITIES, AND NEED FOR RELIEF

49.     In deciding whether to grant relief, the Court must balance the likelihood of the

Commission's ultimate success on the merits against the *public* equities, using a sliding scale.

Equities affecting only Defendants cannot tip the scale.

50.     The Commission's administrative complaint raises questions about the lawfulness

of Defendants' proposed acquisition under the Clayton Act and the FTC Act that are serious,

substantial, difficult, or doubtful enough to make them fair ground for thorough investigation,

study, deliberation, and determination by the Commission during the administrative proceeding in

the first instance, subject to appellate review.

51.     The Commission has reason to believe that the proposed transaction if

consummated may substantially lessen competition in violation of Section 7 of the Clayton Act

and that the acquisition agreement violates Section 5 of the FTC Act. In particular, the Complaint

Counsel for the Commission is likely ultimately to succeed in demonstrating, among other things,

that:

    a.  The proposed acquisition would have anticompetitive effects in markets no

        broader that the manufacture and sale of liquid finishing pumps, spray guns, and

        proportioners for industrial end use, the manufacture and sale of circulation pumps

        for paint systems in automotive assembly plants, and the manufacture and sale of

        industrial liquid finishing equipment for resale, and

    b.  Substantial and effective entry into these markets is difficult, and would not be

        likely, timely, or sufficient to offset the anticompetitive effects of the transaction;

        and

     c.    Any efficiencies or synergies that Defendants may assert will result from the acquisition are speculative, not transaction-specific, and are, in any event, insufficient as a matter of law to justify the acquisition.

52.    Should the Commission rule, after the full administrative trial, that the proposed transaction is unlawful, completely reestablishing the *status quo ante* of vigorous competition between Graco and ITW would be difficult, if not impossible, if the acquisition has already occurred.  Moreover, substantial harm to competition would likely occur in the interim, even if one could devise suitable divestiture remedies.

53.    Accordingly, the equitable relief requested here is in the public interest.

WHEREFORE, the Commission respectfully requests that the Court:

1.    Temporarily restrain and preliminarily enjoin Graco Inc., Illinois Tool Works Inc., and ITW Finishing LLC from taking any further steps to consummate the proposed acquisition, or any other acquisition of stock, assets, or other interests, either directly or indirectly;

2.    Retain jurisdiction and maintain the status quo until the administrative proceeding that the Commission has initiated is concluded; and

3.    Award such other and further relief as the Court may determine is appropriate, just, and proper.

December 15, 2011

Respectfully submitted,

By: 

PHILLIP L. BROYLES
Assistant Director
PETER RICHMAN
MARC W. SCHNEIDER
BRIAN TELPNER (D.C. Bar No. 462812)
ROBERT FRIEDMAN
AMANDA HAMILTON (D.C. Bar No. 499646)
CATHLIN TULLY
ANNA CHEHTOVA
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-2805

Richard A. Feinstein
Director
Norman A. Armstrong, Jr.
Deputy Director
Federal Trade Commission
Bureau of Competition

Willard K. Tom
General Counsel
Federal Trade Commission

*Attorneys for the Plaintiff*

19