IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br><br>Plaintiff<br><br>v.<br><br>GRACO INC.<br>88 11th Avenue Northeast<br>Minneapolis, MN 55413<br><br>ILLINOIS TOOL WORKS INC., and<br>ILLINOIS TOOL WORKS FINISHING<br>LLC,<br>3600 West Lake Avenue<br>Glenview, IL 60026<br><br>Defendants. | Civil Action No. _1:11-cv-02239 RLW_<br><br>**FILED UNDER SEAL** |

**MEMORANDUM OF LAW IN SUPPORT OF GRACO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER
VENUE AND TO TRANSFER**

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT.................................................................................................. 2

   A.   THIS COURT SHOULD DISMISS THIS MATTER FOR LACK OF
        JURISDICTION AND IMPROPER VENUE ...................................................... 2

   B.   THE COURT SHOULD TRANSFER THIS MATTER TO THE
        DISTRICT OF MINNESOTA........................................................................ 7

        1.   THIS ACTION COULD HAVE BEEN BROUGHT IN THE
             DISTRICT OF MINNESOTA................................................................ 9

        2.   THE INTERESTS OF JUSTICE AND CONVENIENCE OF THE
             PARTIES AND WITNESSES FAVOR TRANSFER TO THE
             DISTRICT OF MINNESOTA.............................................................. 10

             (a)   The FTC's Choice of Forum is Entitled to Little Weight............ 11

             (b)   Defendants' Desired Forum Should be Given Deference
                   Because All of the Material Events Occurred There or
                   Nearby.......................................................................... 13

             (c)   This Claim Arose in the Midwest............................................. 13

             (d)   The District of Minnesota is a More Convenient Forum for
                   the Parties and the Witnesses........................................... 14

             (e)   Ease of Access to Sources of Proof Weighs in Favor of
                   Transfer......................................................................... 17

III.  CONCLUSION.............................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Akers v. Watts,*
740 F. Supp. 2d 83 (D.D.C. 2010) ................................................................................3

*Athletes Foot of Del., Inc. v. Ralph Libonati Co.,*
445 F. Supp. 35 (D. Del. 1977) ....................................................................................5

*C.I.S. of Pine Bluff, Inc. v. Alltel Cellular Assocs. of Ark. Ltd. P'ship,*
175 B.R. 834 (S.D.N.Y. 1994) ...................................................................................12

*\*Cameron v. Thornburgh,*
983 F.2d 253 (D.C. Cir. 1993) .....................................................................................3

*Chrysler Corp. v. General Motors Corp.,*
589 F. Supp. 1182 (D.D.C. 1984) ................................................................................4

*Commonwealth Edison Co. v. Fed. Pac. Elec. Co.,*
208 F. Supp. 936 (N.D. Ill. 1962) ...............................................................................6

*Comptroller of Currency v. Calhoun First Nat'l Bank,*
626 F. Supp. 137 (D.D.C. 1985) ...........................................................................11, 12

*Dalton v. R&W Marine, Inc.,*
897 F.2d 1359 (5th Cir. 1990) .....................................................................................7

*Diamond Chem. Co., v. Atofina Chems.,*
268 F. Supp. 2d 1 (D.D.C. 2003) .................................................................................4

*\*FC Inv. Group LC v. IFX Mkts.,*
529 F.3d 1087 (D.C. Cir. 2008) ...................................................................................3

*\*FTC v. Cephalon,*
551 F. Supp. 2d 21 (D.D.C. 2008) .......................................................................passim

*FTC v. Watson Pharms., Inc.,*
611 F. Supp. 2d 1081 (C.D. Cal. 2009) ...........................................................8, 10, 12

*GTE New Media Servs. v. BellSouth Corp.,*
199 F.3d 1343 (D.C. Cir. 2000) ...................................................................................4

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947) ...................................................................................................15

*In re Apple, Inc.,*
602 F.3d 909 (8th Cir. 2010) .........................................................................9, 14, 17

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Genentech, Inc.,*
    566 F.3d 1338 (Fed. Cir. 2009) ........................................................................................ 9

*In re Hoffman-La Roche Inc.,*
    587 F.3d 1333 (Fed. Cir. 2009) ...................................................................................... 17

*\*Intrepid Potash-N. Mex., LLC v. United States Dep't of Interior,*
    669 F. Supp. 2d 88 (D.D.C. 2009) ................................................................................. 12

*Koh v. Microtek Int'l, Inc.,*
    250 F. Supp. 2d 627 (E.D. Va. 2003) ......................................................................... 9, 15

*Lee v. Ply\*Gem Indus.,*
    593 F.2d 1266 (D.C. Cir. 1979) ....................................................................................... 5

*Lentz v. Eli Lilly & Co.,*
    464 F. Supp. 2d 35 (D.D.C. 2006) ................................................................................... 9

*Liban v. Churchey Group II, L.L.C.,*
    305 F. Supp. 2d 136 (D.D.C. 2004) ............................................................................... 11

*Minn. Min. & Mfg. Co. v. Platt,*
    314 F.2d 369 (7th Cir. 1963) ........................................................................................... 9

*Montgomery v. STG Int'l, Inc.,*
    532 F. Supp. 2d 29 (D.D.C. 2008) ................................................................................. 10

*\*Naartex Consulting Corp. v. Watt,*
    722 F.2d 779 (D.C. Cir. 1983) ......................................................................................... 3

*Novak-Canzeri v. Al Saud,*
    864 F. Supp. 203 (D.D.C. 1994) ...................................................................................... 3

*Otay Mesa Prop., L.P. v. United States Dep't of Interior,*
    584 F. Supp. 2d 122 (D.D.C. 2008) ............................................................................... 12

*Pac. Car & Foundry Co. v. Pence,*
    403 F.2d 949 (9th Cir. 1968) ......................................................................................... 12

*Pain v. United Tech. Corp.,*
    637 F.2d 775 (D.C. Cir. 1980) ....................................................................................... 15

*Pocahontas Supreme Coal Co. v. Nat'l Mines Corp.,*
    90 F.R.D. 67 (S.D.N.Y. 1981) .......................................................................................... 6

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Reynolds Metals Co. v. Columbia Gas Sys.*,
    669 F. Supp. 744 (E.D. Va. 1987) ........................................................................4, 5

*Reynolds Metals Co. v. Columbia Gas Sys.*,
    694 F. Supp. 1248 (E.D. Va. 1988) ..........................................................................4

*Riviera Trading Corp. v. Oakley, Inc.*,
    944 F. Supp. 1150 (S.D.N.Y. 1996) .........................................................................7

*SAS of P.R. v. P.R. Tel. Co.*,
    833 F. Supp. 450 (D. Del. 1993) .............................................................................12

*Schmidt v. Am. Inst. of Physics*,
    322 F. Supp. 2d 28 (D.D.C. 2004) ............................................................12, 13, 17

*Sea-Roy Corp. v. Parts R Parts, Inc.*,
    No. 9:94CV00059, 1996 WL 557857 (M.D.N.C. July 30, 1996) ...........................7

*SEC v. Ernst & Young*,
    775 F. Supp. 411 (D.D.C. 1991) ......................................................................passim

*SEC v. Page Airways, Inc.*,
    464 F. Supp. 461 (D.D.C. 1978) .............................................................................12

*SEC v. Roberts*,
    No. CIV.A. 07-407, 2007 WL 2007504 (D.D.C. July 10, 2007) ...........................11

*Second Amendment Found. v. United States Conference of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001) ..................................................................................3

*Stairmaster Sports/Med. Prods., Inc. v. Pac. Fitness Corp.*,
    Nos. 95-1232, 95-1255, 1996 WL 39681 (Fed. Cir. Jan. 31, 1996) .......................7

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) .....................................................................................................8

*Tavoulareas v. Comnas*,
    720 F.2d 192 (D.C. Cir. 1983) ..................................................................................3

*United States v. E.I. Du Pont De Nemours & Co.*,
    83 F. Supp. 233 (D.D.C. 1949) ...............................................................................11

*United States v. General Motors Corp.*
    183 F. Supp. 858 (S.D.N.Y. 1960) .........................................................................16

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*United States v. Microsemi Corp.*,
No. 1:08cv1311, 2009 WL 577491 (E.D. Va. Mar. 4, 2009) ..........................................8, 10, 16

*United States v. Scophony Corp.*,
333 U.S. 795 (1948)............................................................................................................5

*United States v. Smithfield Foods, Inc.*,
332 F. Supp. 2d 55 (D.D.C. 2004) ..................................................................................14

*United States v. Swift & Co.*,
158 F. Supp. 551 (D.D.C. 1958) ......................................................................................10

*Verosol B.V. v. Hunter Douglas, Inc.*,
806 F. Supp. 582 (E.D. Va. 1992) ......................................................................................7

**STATUTES**

15 U.S.C. § 18................................................................................................................................1

15 U.S.C. § 22................................................................................................................................4

15 U.S.C. § 23..............................................................................................................................16

15 U.S.C. § 45................................................................................................................................1

15 U.S.C. § 53..........................................................................................................................1, 3

28 U.S.C. § 1391...........................................................................................................................9

28 U.S.C. § 1404......................................................................................................................1, 7

28 U.S.C. § 1406......................................................................................................................1, 3

**RULES**

Fed. R. Civ. P. 45........................................................................................................................16

Fed. R. Civ. P. 12......................................................................................................................1, 2

**OTHER AUTHORITIES**

*StarTribune 100: The 20th Annual Report*, StarTribune,
http://ww3.startribune.com/projects/st100/employeeView.php ..................................................2

U.S. Bureau of Economic Analysis, 2010 D.C. GDP - All Industries
http://www.bea.gov/regional/gsp/http://www.bea.gov/regional/gsp/..........................................6

## I.    INTRODUCTION

Defendant submits this memorandum in support of its motion to dismiss Plaintiff Federal Trade Commission's ("FTC's") complaint for temporary restraining order and preliminary injunction pursuant to Rules 12(b)(3) and (6) of the Federal Rules of Civil Procedure and 15 U.S.C. § 53(b), and to transfer this action pursuant to 28 U.S.C. §§ 1404(a) or 1406(a) to the United States District Court for the District of Minnesota.

On December 15, 2011, the FTC filed a complaint against Graco Inc. ("Graco"), Illinois Tool Works Inc. ("ITW"), and Illinois Tool Works Finishing LLC (collectively "defendants") in which the FTC alleged that Graco's proposed acquisition of ITW's finishing businesses violated Section 5 of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45 ("FTC Act"), and Section 7 of the Clayton Act, 15 U.S.C. § 18, as amended ("Clayton Act"). The FTC has filed a complaint for a temporary restraining order and preliminary injunction in this Court under Section 13(b) of the FTC Act, as amended. Section 13(b) only authorizes the FTC to seek an injunction against "*such* person, partnership, or corporation" that "is violating, or is about to violate" the law and only in the district where that corporation "resides or transacts business." 15 U.S.C. § 53(b)(1) (FTC Act § 13(b)) (emphasis added).[1]

Graco, the acquiror, does not "reside" or "transact business" in the district. *Id.* Graco is a Minnesota corporation with its principal place of business in Minneapolis. Graco owns no property and has no employees in the District of Columbia. Graco has not entered into any sales contracts in the District of Columbia nor has it entered into any contracts governed by District of Columbia law. Graco has, at most, *de minimis* contacts with this forum. Graco shipped a very

---

[1] The FTC also seeks relief under Section 7 of the Clayton Act. The relevant venue and jurisdiction provision for that claim is Section 12 of the Clayton Act. The Section 12 standard is similar to the Section 13(b) standard.

small percentage of its products (unrelated to those at issue in this litigation) into the District of

Columbia at the request of two customers located outside this jurisdiction.  The complaint

challenges a transaction negotiated and agreed upon in Minnesota.  Moreover, the majority of

witnesses and evidence in this case are located in Minnesota or elsewhere in the Midwest

because Graco's and ITW's United States finishing businesses are located there.

Even if venue were proper here, transfer to the United States District Court for the

District of Minnesota nonetheless would be appropriate.  The convenience of the parties and

witnesses overwhelmingly supports transfer to the District of Minnesota.  All of the United

States assets and operations at issue are located in the Midwest, and most of the witnesses,

including third-party customers and competitors, are located in the Midwest.  To Graco's

knowledge, not one potential fact witness apparently resides in this District.

Similarly, the public interest weighs heavily in favor of transfer.  Graco is among the top

fifty employers in Minnesota, with 2,150 employees.[2] The nexus of this action also is in

Minnesota.  Thus, Minnesota is the state most directly impacted by this matter and has a strong

local interest in this litigation.

In sum, the complaint must be dismissed for lack of personal jurisdiction and improper

venue under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and the Court

should transfer this action to the District of Minnesota.

## II.    ARGUMENT

### A.    THIS COURT SHOULD DISMISS THIS MATTER FOR LACK OF JURISDICTION AND IMPROPER VENUE

The FTC cannot ignore its own enabling statute simply because it prefers to litigate in the

District of Columbia.  "Courts in this circuit must examine challenges to . . . venue carefully to

---

[2] *StarTribune 100: The 20th Annual Report*, StarTribune, http://ww3.startribune.com/projects/
st100/employeeView.php.

guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). In a case filed in a jurisdiction in which venue is improper, the Court should either dismiss the case or, in the interest of justice, transfer it to a district where it could have been brought. 28 U.S.C. § 1406(a). The decision to transfer is left to the Court's discretion. *See Novak-Canzeri v. Al Saud*, 864 F. Supp. 203, 207 (D.D.C. 1994); *Akers v. Watts*, 740 F. Supp. 2d 83, 93 (D.D.C. 2010).

The FTC bears the burden of establishing that jurisdiction is proper with respect to Graco. *FC Inv. Group LC v. IFX Mkts.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008) ("The plaintiff[] ha[s] the burden of establishing the court's personal jurisdiction over [defendant]."); *see Tavoulareas v. Comnas*, 720 F.2d 192, 195 (D.C. Cir. 1983) (stating that "[p]laintiffs bear the burden of establishing jurisdiction, and it must appear on the face of the complaint.") (citations omitted). Plaintiff must allege jurisdictional facts sufficient to connect the defendant to the forum. *See Second Amendment Found. v. United States Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). An allegation that is "nothing more than a legal conclusion . . . 'does not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction.'" *Id.* (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787-88 (D.C. Cir. 1983)).

Section 13(b) of the FTC Act authorizes the FTC to seek an injunction against "*such* person, partnership, or corporation" that "is violating, or is about to violate" the law and only in the district where that person "resides or transacts business." 15 U.S.C. § 53(b)(1) (emphasis added). Graco neither resides nor transacts business in this District. The company has virtually nothing to do with the District of Columbia. Graco:

- Is *not* incorporated or registered to do business in the District of Columbia;

- Does *not* have any employees working out of or with an office in the District of Columbia;

- Does *not* own, operate, or lease property or facilities in the District of Columbia;

- Does *not* maintain a banking or financial account in the District of Columbia;

- Does *not* manufacture any products in the District of Columbia; and

- Has *not* entered into any sales contracts in the District of Columbia or any contracts pursuant to District of Columbia law during the period relevant to this litigation.

Ex. 1 ¶ 7.

Section 7 of the Clayton Act, another statute the FTC invokes in its complaint, has a venue and jurisdiction standard similar to the FTC Act.   Section 12 of the Clayton Act provides that suit against a corporation under the antitrust laws must be brought in a district where the corporation is an "inhabitant, but also in any district wherein it may be found or transacts business."  15 U.S.C. § 22; *see also GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000).  "A single analysis resolves the issues of personal jurisdiction and proper venue under § 12 of the Clayton Act." *Reynolds Metals Co. v. Columbia Gas Sys.*, 669 F. Supp. 744, 747 (E.D. Va. 1987).  In other words, a "Rule 12(b)(2) motion, to the extent it goes to the *statutory* provision of personal jurisdiction in section 12 [of the Clayton Act], turns on the finding *vel non* . . . of venue under section 12." *Reynolds Metals Co., v. Columbia Gas Systems* 694 F. Supp. 1248, 1251 (E.D. Va. 1988); *see also GTE*, 199 F.3d at 1351 (D.C. Cir. 2000) ("The language of [Section 12] is plain, and its meaning seems clear: . . . invocation of the nationwide service clause rests on satisfying the venue provision."); *Diamond Chem. Co. v. Atofina Chems.*, 268 F. Supp. 2d 1, 10 (D.D.C. 2003) ("'Section 12 . . . permits service of process in a non-forum district, so long as the venue provision is met.'") (quoting *Chrysler Corp. v. General Motors Corp.*, 589 F. Supp. 1182, 1195 (D.D.C. 1984)).

Graco is an "inhabitant" of Minnesota, not of the District of Columbia. *Chrysler Corp.*, 589 F. Supp. at 1195 ("[a] corporation is said to be an inhabitant of the state of its

4

incorporation"). And the company cannot be "found" in the District of Columbia. "To be 'found' in a district for the purposes of the venue section of the Clayton Act, 'a corporation must have duly authorized officers and agents carrying on the business of the corporation within the district.'" *Reynolds Metals Co.*, 669 F. Supp. at 747 (quoting *Athletes Foot of Del., Inc. v. Ralph Libonati Co.*, 445 F. Supp. 35, 42 (D. Del. 1977)). Graco owns no real property in the District of Columbia; does not have any agents, officers, or employees based in the District of Columbia; and maintains no physical presence in the District of Columbia by way of office, post office box, telephone, or otherwise. Ex. 1 ¶ 7.

In applying the "transacts business" element, "the proper approach . . . is to look at the entire relationship between the party and the forum state." *Reynolds Metals*, 669 F. Supp. at 748. In determining whether a corporation "transacts business" within a district, the court must look at "the practical, everyday business or commercial concept of doing business or carrying on business of any substantial character." *Id.* at 747 (quoting *United States v. Scophony Corp.*, 333 U.S. 795, 807 (1948)). The court must also determine *when* a defendant transacted business in the forum. The relevant time period is when the cause of action arose. *See Lee v. Ply*Gem Indus.*, 593 F.2d 1266, 1273 (D.C. Cir. 1979) (holding that the "temporal frame of reference . . . is the point at which the cause of action arises, not the date suit is commenced"). Thus, venue is proper in this jurisdiction only if Graco transacted business of a substantial character in the District of Columbia at or about the time the alleged causes of action accrued—*i.e.*, April 2011, when the proposed transaction was agreed upon.

Graco has not transacted business of a substantial character in this district. The company does not manufacture any products here, does not have any employees or representatives located in the District of Columbia, does not maintain any bank or financial accounts in the District of

Columbia, does not lease or own any property in the District of Columbia, and does not even have a post office box, telephone number, or facsimile number. Ex. 1 ¶ 7.  An entirely insubstantial amount of Graco's products (none of which were any of the finishing products at issue in this case) entered the District of Columbia.  Graco's 2011 year-to-date, direct shipments of products into the District of Columbia were valued at ███████ and amounted to less ███████ of Graco's total U.S. sales.[3]  Ex. 1 ¶ 8, App. A.  These were purchased by ████████ ███████ █████ and ██████████  ███████████████ The purchases were negotiated outside of the District pursuant to Graco's Sales Order Terms and Conditions governed by ███████████ law. Ex. 1, App. B.  The orders were paid for by the out-of-state companies, who requested that the product be shipped to stores located in the District of Columbia.

Where, as here, Graco's shipments into the District of Columbia are *de minimis*, venue and jurisdiction under Section 12 are not proper.[4]  *See Commonwealth Edison Co. v. Fed. Pac. Elec. Co.*, 208 F. Supp. 936, 939 (N.D. Ill. 1962) (finding that defendant's sales within the district were "a fraction of one per cent of its total [annual] gross sales" and therefore not substantial under Section 12); *Pocahontas Supreme Coal Co. v. Nat'l Mines Corp.*, 90 F.R.D. 67, 70 n.2 (S.D.N.Y. 1981) (holding that three spot market sales by defendant into the forum, representing 0.2 percent of defendant's production over the relevant period, "cannot be viewed as substantial enough to result in a transaction of business for venue purposes" under Section

---

[3] Graco's 2011 direct shipments in to the District are consistent with past years' sales: ███████ ███████ of total U.S. sales); ██████████  of total U.S. sales); ███████ ████ of total U.S. sales); and ███████  of total U.S. sales).

[4] Graco's sales into the District of Columbia are also insignificant when viewed in context of the District of Columbia economy.  According to the U.S. Bureau of Economic Analysis, the District of Columbia's Gross Domestic Product was over $103 billion in 2010.  *See* http://www.bea.gov/regional/gsp/.

12).[5] Graco's contacts with the District of Columbia also are far more limited than in *Sea-Roy Corp. v. Parts R Parts*, where the court found no jurisdiction under Section 12 even though the defendant sold $1.4 million of engines and parts to the plaintiff in the forum over a period of roughly six or seven years and sent its agents to the forum to address certain distribution and pricing complaints. *Sea-Roy Corp. v. Parts R Parts, Inc.*, No. 9:94CV00059, 1996 WL 557857, at *3 (M.D.N.C. July 30, 1996). The court determined that such business dealings were not sufficiently substantial to warrant jurisdiction over a corporation that was not incorporated or licensed to do business in the state, did not manufacture products in the forum, did not own or lease property in the forum, did not maintain a bank account in the forum, and employed no officers, employees, or agents in the forum. *See id.* at *1.

## B.  ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS MATTER TO THE DISTRICT OF MINNESOTA

This case should be litigated in the District of Minnesota for the convenience of parties and witnesses. 28 U.S.C. § 1404(a). Graco is located in Minneapolis. ITW is located at several locations in the Midwest in relative proximity to Minneapolis: Toledo, Ohio; Swanton, Ohio; Angola, Indiana; Jackson, Tennessee; Glendale Heights, Illinois; Glenview, Illinois; Louisville, Colorado; Indianapolis, Indiana; and Blaine, Minnesota. All material events giving rise to this

---

[5] Courts routinely use a similar analysis when assessing general jurisdiction. *See Stairmaster Sports/Med. Prods., Inc. v. Pac. Fitness Corp.*, Nos. 95-1232, 95-1255, 1996 WL 39681, at *1 (Fed. Cir. Jan. 31, 1996) (affirming denial of general jurisdiction where defendant "does not have offices in [the state], is not registered to do business in [the state], does not own property in [the state] and does not pay taxes in [the state]. In addition, the products that [defendant] shipped to [the state] . . . constitute only 3% of its total [annual] sales volume."); *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (finding no general jurisdiction where defendant derived 12.9% of revenue from forum); *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1154 (S.D.N.Y. 1996) (denying general jurisdiction where in year before lawsuit, defendant's sales in forum "amounted to $2.5 million, which constituted 1.9% of [] domestic sales and 1.4% of [] total sales"); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 590-92 (E.D. Va. 1992) (expressing doubt that general jurisdiction could be exercised when over the course of three years the defendant shipped 37,800 products worth $2,286,700 to the forum state).

matter occurred in Minnesota or in the Midwest.  The vast majority of the Graco and ITW

employees who would provide testimony regarding the acquisition and all relevant documentary

evidence are located in the District of Minnesota or in nearby Midwestern locations.

Additionally, almost all the likely third party witnesses, including Graco's and ITW's

competitors and customers, are located in Minnesota or elsewhere in the Midwest.  Indeed, it

appears that most of the witnesses, party and third-party, on which the FTC bases its complaint

are in Minneapolis or elsewhere in the Midwest.[6]

     Motions to transfer are governed by 28 U.S.C. § 1404(a), which provides: "For the

convenience of the parties and witnesses, in the interest of justice, a district court may transfer

any civil action to any other district or division where it might have been brought."  *See also*

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (the decision to transfer venue

according to an "individualized, case-by-case consideration of convenience and fairness" is

within the district court's discretion).[7]  The court must consider: (1) whether "the action could

---

[6] The fact that the FTC has also instituted an administrative law proceeding in this District is not
relevant to this court's analysis. Graco intends to move to transfer any such administrative law
proceeding as well. Under the FTC's own Rules of Practice, the Administrative Law Judge can
hold hearings in more convenient locations and has done so in the past. *See, e.g.*, Scheduling
Order, *In re N. Tex. Specialty Physicians*, No. 9312, *available at* http://ftc.gov/os/adjpro/d9312/
031016aljschedorder.pdf.

[7] Courts have consistently recognized that Section 1404(a) standards apply in antitrust cases.  In
the past few years, federal antitrust agencies have brought three cases in inconvenient fora for
obvious strategic reasons, and the district courts transferred each case to the more convenient
venue. *See  FTC v. Cephalon*, 551 F. Supp. 2d 21, 27-29 (D.D.C. 2008) (finding that the FTC's
antitrust case had "no meaningful connection" to Washington, D.C. and that the risk of
inconsistent judgments warranted transfer); *FTC v. Watson Pharms., Inc.*, 611 F. Supp. 2d 1081,
1089-90 (C.D. Cal. 2009) (noting FTC's "choice of forum, while taken into account, is not a
sufficiently strong factor to deny the motion to transfer" and thus deciding to transfer the FTC's
case to the Central District of Georgia where a federal judge was already overseeing the
agreement at issue); *United States v. Microsemi Corp.*, No. 1:08cv1311, 2009 WL 577491, at
*10 (E.D. Va. Mar. 4, 2009) (ordering transfer to California for the convenience of witnesses in a

have been brought in the proposed transferee district;" and (2) whether "the balance of convenience of the parties and witnesses and the interest of justice" weigh in defendant's favor. *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 36-37 (D.D.C. 2006).  As discussed below, the standards for change of venue are satisfied here.[8]

### 1.   THIS ACTION COULD HAVE BEEN BROUGHT IN THE DISTRICT OF MINNESOTA.

"In order to demonstrate that an action might have been brought in a proposed transferee district, a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).  The FTC Act's "venue provision provides, in relevant part, that '[a]ny suit may be brought where . . . [the] corporation resides or transacts business, or wherever venue is proper under section 1391 of title 28.'"[9] *FTC v. Cephalon*, 551 F. Supp. 2d 21, 25 (D.D.C. 2008) (quoting 15 U.S.C. § 53(b)(2)).  Graco and ITW are both found in and transact business in the District of Minnesota.

---

merger case and not giving deference to the government's choice of forum when the operative facts of the case took place in California).

[8] *See In re Apple, Inc.*, 602 F.3d 909, 913-16 (8th Cir. 2010) (granting mandamus petition and directing district court to transfer matter to Central District of California, where, *inter alia*, defendant was headquartered, most documents and potential witnesses were located, and the alleged wrongs occurred), *petition for cert. filed* (Sept. 28, 2010) (No. 10-615); *In re Genentech, Inc.*, 566 F.3d 1338, 1345-48 (Fed. Cir. 2009) (same); *Minn. Min. & Mfg. Co. v. Platt*, 314 F.2d 369, 375 n.3 (7th Cir. 1963) (Where Delaware corporation, charged with violation of Sherman Act, had its main offices in Minnesota where many of its officers, employees, and stockholders lived, and a trial in Illinois would result in unjustifiable increased expenses to corporation, great inconvenience of witnesses, and serious disruption of business, and there was no serious congestion in docket of district court of Minnesota, refusal of corporation's motion to transfer the action to district court in Minnesota on ground that it would be more difficult to get an impartial jury in Minnesota was an abuse of discretion).

[9] None of the other exceptions of 28 U.S.C. § 1391(a) apply (*e.g.*, a "substantial part of the events" took place in this District, or "there is no district in which the action may otherwise be brought").

Graco's Minnesota connections make it "plainly evident" that the FTC could have filed its complaint there. *See Cephalon*, 551 F. Supp. 2d at 25 (finding it "plainly evident" that the FTC could have brought suit in the district where the defendant transacted business and had its principle place of business); *SEC v. Ernst & Young*, 775 F. Supp. 411, 413 (D.D.C. 1991) (holding that the district where the defendant transacted business "certainly met" the alternative forum prerequisite).

2.    **THE INTERESTS OF JUSTICE AND CONVENIENCE OF THE PARTIES AND WITNESSES FAVOR TRANSFER TO THE DISTRICT OF MINNESOTA.**

There is ample precedent for the transfer of antitrust actions for the convenience of parties and the interests of justice.[10]  The factors to be considered are: "(1) the plaintiff's choice of forum, (2) the defendants' choice of forum, (3) where the claim arose, (4) the convenience of the parties, (5) the convenience of the witnesses, . . . and (6) the ease of access to proof." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32-33 (D.D.C. 2008); *Cephalon*, 551 F. Supp. 2d at 25.[11]  As set forth below, virtually all of these factors support transfer to the District of Minnesota.

---

[10] *See, e.g., Cephalon*, 551 F. Supp. 2d at 32; *United States v. Swift & Co.*, 158 F. Supp. 551, 560 (D.D.C. 1958) (granting defendants' motion to transfer the government's antitrust action to the Northern District of Illinois); *Watson Pharms.*, 611 F. Supp. 2d at 1087-89 (noting FTC's "choice of forum, while taken into account, is not a sufficiently strong factor to deny the motion to transfer"); *Microsemi Corp.*, 2009 WL 577491, at *10 (ordering transfer to California for the convenience of witnesses in a merger case).

[11] The Court in *Cephalon* also set out public interest factors which include the transferee's familiarity with the governing laws, the relative congestion of the calendars of the potential transferee and transferor courts, and the local interest in deciding local controversies at home. *See, e.g., Cephalon*, 551 F. Supp. 2d at 25 (citations omitted). Two of these three factors on balance have essentially a neutral effect in this case. The third factor, the local interest in deciding local controversies at home, weighs heavily in favor of transfer. Graco is a major business in Minnesota and has 2,150 employees in the state. This transaction and the outcome of

### (a)  The FTC's Choice of Forum is Entitled to Little Weight

The enactment of Section 1404(a) helped to correct the "inherently unfair" deference previously afforded the government's choice of forum. *See United States v. E.I. Du Pont De Nemours & Co.*, 83 F. Supp. 233, 234-35 (D.D.C. 1949) ("[I]t has been recognized by many that the existence of this preferential position of the Government was inherently unfair and needed modification in order that the Government and defendants might approach some degree of equality in this respect and that the defendants would have some rights in this matter.").

Courts have consistently not given substantial weight to a plaintiff's choice of forum "when the plaintiff is not a resident of the chosen forum" or the "plaintiff's choice of forum has no meaningful ties to the controversy." *Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 141-42 (D.D.C. 2004)  As this Court has recognized, a federal agency's presence in a particular forum is alone not a sufficient reason to defer to the agency's decision to file suit in that forum. In *Cephalon*, Judge Bates explained in the specific context of an antitrust enforcement action brought by the FTC:

> Here, apart from the fact that many of the FTC's prosecuting attorneys are located in this area, there are no meaningful ties between the District of Columbia and the events (or parties) that gave rise to this action . . . . To be sure, the FTC 'resides' in the District of Columbia in the sense that the agency's headquarters is located here.   But beyond that, there is essentially no nexus between the District of Columbia and this controversy.

*Id.* (granting defendant's motion to transfer venue in part because none of the underlying acts "at the heart of this controversy took place in, or were in any other way related to, the District").[12]

---

this litigation will have a direct and meaningful impact on Minnesota. Thus, venue is most appropriate in the District of Minnesota.

[12] *See also SEC v. Roberts*, No. CIV.A. 07-407, 2007 WL 2007504, at *3 (D.D.C. July 10, 2007) (ordering transfer even though SEC had offices in D.C.); *Ernst & Young*, 775 F. Supp. at 414 (finding that transferring venue to the Central District of Texas was appropriate where underlying occurrences and most witnesses were in Texas); *Comptroller of Currency v. Calhoun*

Moreover, "[p]laintiff's choice [of forum] is entitled to less deference where the connection between plaintiffs, the controversy and the chosen forum is attenuated." *Otay Mesa Prop., L.P. v. United States Dep't of Interior*, 584 F. Supp. 2d 122, 125 (D.D.C. 2008) (quotation marks omitted).[13] Nothing of any significance to this case has occurred in the District of Columbia. Additionally, the FTC's claims arose from conduct that took place in the District of Minnesota. Graco is headquartered in the District of Minnesota. Ex. 1 ¶ 4. The proposed transaction that is the subject of this litigation was negotiated in the District of Minnesota. A substantial portion of the parties' business is conducted in Minnesota or in the Midwest. All of these facts weigh against the FTC's chosen forum and in favor of transfer to the District of Minnesota.

Indeed, courts have afforded the *defendant's* suggested forum deference where, as here, "a majority of material events" underlying the action occurred in that forum. *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 34 (D.D.C. 2004); *see Intrepid Potash-N. Mex., LLC v. United States Dep't of Interior*, 669 F. Supp. 2d 88, 95 (D.D.C. 2009) ("Transfer is supported when the

---

*First Nat'l Bank*, 626 F. Supp. 137, 140 n.14 (D.D.C. 1985) (granting motion to transfer venue to the Central District of Georgia where only two of 67 possible witnesses did not reside there); *SEC v. Page Airways, Inc.*, 464 F. Supp. 461, 464-65 (D.D.C. 1978) (transferring action to the Western District of New York where 25 of 64 potential witnesses were located and all other witnesses were equal distances from the Western District of New York and the District of Columbia).

[13] Courts outside of this district agree. *See Watson Pharms.*, 611 F. Supp. 2d at 1089 ("Plaintiffs' choice of forum, while taken into account, is not a sufficiently strong factor to deny the motion to transfer"); *C.I.S. of Pine Bluff, Inc. v. Alltel Cellular Assocs. of Ark. Ltd. P'ship*, 175 B.R. 834, 837 (S.D.N.Y. 1994) (same); *SAS of P.R. v. P.R. Tel. Co.*, 833 F. Supp. 450, 452-53 (D. Del. 1993) (same); *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954-55 (9th Cir. 1968) (holding that "[p]laintiff's choice of forum . . . is not the final word. . . . If the operative facts have not occurred within the forum of the original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.").

material events that constitute the factual predicate for the plaintiff's claims occurred in the transferee district.") (quotation marks omitted).

**(b)      Defendants' Desired Forum Should be Given Deference Because All of the Material Events Occurred There or Nearby**

All of the material events giving rise to this proceeding occurred in Minnesota or elsewhere in the Midwest, and most of the key witnesses, employees of the parties, customers, and competitors, reside in the Midwest.  Graco's preferred forum is thus entitled to deference.  In *Cephalon*, the Court concluded that deference should be afforded to the defendant's choice of the Eastern District of Pennsylvania as a forum because:

> Cephalon's primary base of operations is in the Eastern District of Pennsylvania. It is a Delaware corporation that merely maintains a very small public affairs office in the District of Columbia.  None of the negotiations that led to the settlement agreements at the heart of this controversy took place in, or were in any other way related to, the District.

551 F. Supp. 2d at 26.  Those same factors apply here:  The primary parties to the acquisition at issue, Graco's and ITW's finishing businesses, have only a *de minimis* connection to this forum. Ex. 1 ¶¶ 7, 8; Ex. 2 ¶¶ 2, 3, 5, App. B.  Graco is based in Minneapolis and ITW's finishing businesses are almost entirely situated in the Midwest. Ex. 1 ¶ 4; Ex. 2 ¶ 2. "None of the negotiations that led to the [transaction] at the heart of this controversy took place in, or were in any other way related to, the District." *Cephalon*, 551 F. Supp. 2d at 26; *see also Schmidt*, 322 F. Supp. 2d at 34 (giving deference to the defendant's choice of forum because it was where "a majority of material events occurred" and the fact that "relevant documents, witnesses and [defendant's] corporate offices are in [defendant's selected forum] supports [defendant's] choice of forum").  Thus, the defendants' choice of forum factor weighs in favor of transfer.

**(c)      This Claim Arose in the Midwest**

This Midwest is the locus of this case:

13

- The Asset Purchase Agreement ("APA") was negotiated, drafted, and executed in Minneapolis;

- Graco, the acquiror, has its principal place of business in Minnesota;

- ITW's U.S. finishing business has its principal place of business in the Midwest;

- Key competitors and other witnesses such as end user and distributor customers are located in Minnesota or elsewhere in the Midwest. They include, among others:



By contrast, "no underlying operative facts," other than the FTC's investigation arose in the District of Columbia. *Ernst & Young*, 775 F. Supp. at 414; *see also United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55, 63 (D.D.C. 2004) ("Because the conduct that allegedly violated the Clayton Act did not occur in the District of Columbia, it would be contrary to the purpose of the Clayton Act's venue provisions to hold [defendant] accountable in this forum."); *Apple*, 602 F.3d at 914 (transferring case to Northern District of California in part because "'alleged wrongs' occurred in Northern California").

### (d)   The District of Minnesota is a More Convenient Forum for the Parties and the Witnesses

In evaluating the convenience of the parties, courts consider factors such as the "'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling,

and the cost of obtaining attendance of willing, witnesses . . . .'" *Pain v. United Tech. Corp.*, 637 F.2d 775, 782 (D.C. Cir. 1980) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)).  Here, the sources of proof are primarily located in the District of Minnesota or elsewhere in the Midwest.  The documents and data that the FTC requested during its merger investigation including those cited in its complaint and motion for a temporary restraining order and preliminary injunction (*e.g.*, business plans, emails, sales data, and pricing data) are primarily located at Graco's headquarters in Minneapolis, or at any of the locations of ITW's finishing businesses in the Midwest.  Ex. 1 ¶ 6; Ex. 2 ¶ 3.  Key Graco employees with knowledge of the transaction are all located at the company's headquarters in Minneapolis, while most key ITW employees are located at its headquarters or at one of the locations of its finishing businesses in the Midwest.  Ex. 1 ¶ 9; Ex. 2 ¶¶ 2, 3.  Neither Graco's nor ITW's finishing business maintains any offices or employees in the District of Columbia.  None of the parties' internal sources of proof are located in the District of Columbia.

"Witness convenience is often dispositive in transfer decisions." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003); *see also Cephalon*, 551 F. Supp. 2d at 28 (holding that witness convenience weighed in favor of venue transfer); *Ernst & Young*, 775 F. Supp. at 414 (granting venue transfer in part because "for the majority of witnesses, trial in Texas would be less burdensome than trial [in the District of Columbia]").  Here, key Graco and ITW employees likely to be called to testify at trial are located in the District of Minnesota or elsewhere in the Midwest.  Ex. 1 ¶ 9; Ex. 2 ¶ 3.  These Graco and ITW executives and finishing business employees have relevant knowledge of the transaction itself or of sales relevant products.  Requiring these witnesses to travel to the District of Columbia to testify would impose unnecessary costs on the parties and disrupt their daily operations.  Ex. 2 ¶ 4.

15

Moreover, it appears that most third party witnesses are also located in Minnesota or the Midwest. Graco has received seventeen letters of support from third parties. Sixteen of those third parties are located in the Midwest, southern Midwest, or West. Ex. 1 ¶ 10. The FTC similarly appears to be relying on declarations from a number of witnesses whose companies are located in those regions, including ▋▋▋▋▋▋▋▋▋▋▋ and ▋▋▋▋ among others. *See* FTC Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction at 5 n.5. Although both the FTC and Graco may be able to obtain compulsory process over relevant witnesses pursuant to 15 U.S.C. § 23,[14] courts have found that third party witness convenience weighs even more heavily in favor of transfer in antitrust actions where nonparty witnesses could be forced to travel from distant forums because they do not have the protection afforded by Rule 45(e).[15] For example, in *United States v. General Motors Corp.*, the court noted that "[i]n a Government antitrust suit, the court must consider the welfare of nonparty witnesses, because they are without the protection from subpoena to attend at places far from home normally afforded them by F.R.C.P. 45(e)," and under 15 U.S.C. § 23 "they may be required to travel from any place in the country." 183 F. Supp. 858, 861-62 (S.D.N.Y. 1960); *see also Microsemi Corp.*, 2009 WL 577491, at *10 ("Given the substantial number of non-party witnesses located outside of this district, and the substantial travel that will be necessary even were this case to remain here, this district provides no real advantage to the Government with respect to securing the attendance of non-party witnesses through subpoena.").

---

[14] 15 U.S.C. § 23 provides that in antitrust actions brought by the United States, with the permission of the Court, "subpoenas for witnesses . . . may run into any other district."

[15] Rule 45(e) provides, in relevant part, that the failure to respond to a subpoena "must be excused if the subpoena purports to require the nonparty to attend or produce at a place" that is "more than 100 miles from where that person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(3)(A)(ii), 45(e).

16

Requiring these witnesses to travel to the District of Columbia for this matter will needlessly inconvenience them. Thus, this Court should grant Graco's Motion to Transfer Venue to the District of Minnesota.

(e) **Ease of Access to Sources of Proof Weighs in Favor of Transfer**

Both Graco and ITW conduct their finishing businesses primarily in Minnesota and elsewhere in the Midwest, and almost all original documents and information related to the transaction are located there as well as access to the witnesses that can explain them. To the extent that some of those documents are now in this forum, it is only because the FTC "subpoenaed them to its D.C. office." *Ernst & Young*, 775 F. Supp. at 415; *accord Apple*, 602 F.3d at 914 ("A plaintiff may not defeat a motion to transfer by shipping relevant documents to local counsel in its chosen venue.") (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009)). "The mere presence of certain documents in Washington does not change the location of the facts underlying this action." *Ernst & Young*, 775 F. Supp. at 415. In short, the ease of access to sources of proof in Minnesota weighs in favor of transfer. *See Cephalon*, 551 F. Supp. 2d at 28 ("Cephalon presumably maintains records and documents . . . in the Eastern District of Pennsylvania."); *Schmidt*, 322 F. Supp. 2d at 35 ("[W]ith respect to the accessibility of sources of proof, AIP indicates that all of its potential witnesses and '[a]ll of the documents pertaining to Plaintiff's employment' are in Maryland, where AIP's corporate offices are located.").

## III.   CONCLUSION

For the reasons set forth above, this Court should dismiss the complaint and grant the defendant's Motion to Transfer Venue to the District of Minnesota.

DATED: December 16, 2011                    Respectfully submitted,

                                            _____
                                            RICHARD G. PARKER (DCBN 327544)
                                            MICHAEL E. ANTALICS (DCBN 475218)
                                            O'Melveny & Myers LLP
                                            1625 Eye Street, NW
                                            Washington, DC 20006
                                            (202) 383-5300
                                            (202) 383-5414 (fax)

                                            Of Counsel:

                                            JOHN H. HINDERAKER
                                            RICHARD A. DUNCAN

                                            Faegre & Benson LLP
                                            2200 Wells Fargo Center
                                            90 South Seventh Street
                                            Minneapolis, MN 55402
                                            (612) 766-7000
                                            (612) 766-1600 (fax)

                                            Attorneys for Graco Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2011, I have caused the foregoing Memorandum of Law in Support of Graco's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and to Transfer Venue to be served by email upon Peter Richman and Mark Schneider of the Federal Trade Commission, 1800 M Street, N.W., Washington, D.C. 20036 and upon Richard Feinstein of the Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580, counsel for Plaintiff; and upon J. Robert Robertson, Hogan Lovells US LLP, 555 13th Street, N.W., Washington, D.C. 20004, counsel for Illinois Tool Works Inc. and Illinois Tool Works Finishing LLC.

COURTNEY C. BYRD (DCBN 999175)
Attorney for Graco Inc.
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)