IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff<br><br><br>      v.<br><br>GRACO INC.<br><br><br><br>ILLINOIS TOOL WORKS INC., and<br>ILLINOIS TOOL WORKS FINISHING<br>LLC,<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. No: 1:11-CV-02239 (RLW)<br>)<br>)<br>) **FILED UNDER SEAL**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY IN SUPPORT OF GRACO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER
VENUE AND TO TRANSFER**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

      A.    THERE IS NEITHER JURISDICTION NOR VENUE IN THIS
            DISTRICT ............................................................................................... 2

      B.    THE INTERESTS OF JUSTICE AND CONVENIENCE OF THE
            PARTIES AND WITNESSES FAVOR TRANSFER TO THE
            DISTRICT OF MINNESOTA ................................................................ 11

            1.    Local Interest ............................................................................. 13

            2.    Court Congestion and Familiarity with Governing Law ......................... 15

            3.    Plaintiff's Choice of Forum ....................................................... 15

            4.    Defendant's Proposed Forum ..................................................... 17

            5.    Convenience of Witnesses and Parties ...................................... 18

                  a.    Third-Party Witnesses .................................................... 18

                  b.    Parties ............................................................................. 19

                  c.    Forum Selection Clause .................................................. 19

            6.    Access to Evidence .................................................................... 20

III.  CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bally Gaming v. Kappos,*
    789 F. Supp. 2d 41 (D.D.C. 2011) ............................................................. 9, 10

*Boland v. Fortis Construction,*
    796 F. Supp. 2d 80 (D.D.C. 2011) ..................................................................... 9

*Brady v. Nat'l Football League,*
    779 F. Supp. 2d 992 (D. Minn. 2011) ............................................................. 14

*Briggs v. Goodwin,*
    569 F.2d 1 (D.C. Cir. 1977), ........................................................................... 9

*Brown v. Duchesne,*
    60 U.S. 183 (1857) ........................................................................................... 8

*Daniel v. Am. Bd. of Emergency Med.,*
    428 F.3d 408 (2d Cir. 2005) ............................................................................. 6

*Fanning v. Capco Contractors, Inc.,*
    711 F. Supp. 2d 65 (D.D.C. 2010) ................................................................. 20

*FTC v. Arch Coal, Inc.,*
    329 F. Supp. 2d 109 (D.D.C. 2004) ............................................................... 12

*FTC v. Butterworth Health Corp.,*
    946 F. Supp. 1285 (W.D. Mich. 1996) ........................................................... 11

*FTC v. Cardinal Health, Inc.*
    12 F. Supp. 2d 34, 44 (D.D.C. 1998) ............................................................. 12

*FTC v. CCC Holdings Inc.,*
    605 F. Supp. 2d 26 (D.D.C. 2009) ................................................................. 12

*FTC v. Cephalon, Inc.,*
    551 F. Supp. 2d 21 (D.D.C. 2008) .............................................. 14, 15, 16, 18

*FTC v. Debt Relief USA Inc.*
    No. 3:11cv2059 (N.D. Tex. filed Aug. 17, 2011) ............................................ 5

*FTC v. Direct Benefits Group*
    No. 6:11cv1186 (M.D. Fla. filed Jul. 18, 2011) .............................................. 5

# TABLE OF AUTHORITIES
(continued)

Page

*FTC v. Forensic Case Mgmt. Servs., Inc.*
   No. 2:11cv7484 (C.D. Cal. filed Sept. 12, 2011) ....................................................5

*FTC v. Foster,*
   No. CIV 07-352 JBACT, 2007 WL 1793441 (D.N.M. May 29, 2007) ...................12

*FTC v. Frostwire LLC*
   No. 1:11cv23643 (S.D. Fla. Oct. 7, 2011)................................................................5

*FTC v. H.J. Heinz, Co.,*
   116 F. Supp. 2d 190 (D.D.C. 2000)........................................................................12

*FTC v. Landmark Clearing, Inc.*
   No. 4:11cv826 (E.D. Tex. filed Dec. 15, 2011)........................................................5

*FTC v. Leanspa, LLC*
   No. 3:11cv1715 (D. Conn. filed Oct. 7, 2011) .........................................................5

*FTC v. Lundbeck, Inc.,*
   No. 08-6379, 2010 WL 3810015 (D. Minn. Aug. 31, 2010)...................................14

*FTC v. Mallett,*
   No. 11-01664 (CKK), 2011 WL 4852228 (D.D.C. Oct. 13, 2011)...........................8

*FTC v. National Solutions LLC*
   No. 6:11cv1131 (M.D. Fla. filed July 11, 2011) ......................................................5

*FTC v. OSF Healthcare Sys.,*
   No. 11-cv-50344 (N.D. Ill. filed Nov. 18, 2011)..............................................5, 14

*FTC v. Payday Fin., LLC*
   No. 3:11cv3017 (D.S.D. filed Sept. 6, 2011) ..........................................................5

*FTC v. Phoebe Putney Health Sys. Inc.,*
   793 F. Supp. 2d 1356 (M.D. Ga. 2011) ................................................................14

*FTC v. ProMedica Health Sys., Inc.,*
   No. 3:11CV47, 2011 WL 1219281 (N.D. Ohio Mar. 29, 2011) ............................14

*FTC v. Reebok Int. Ltd.*
   No. 1:11cv2046 (N.D. Ohio filed Sept. 28, 2011)....................................................5

*FTC v. Rincon Mgmt Servs., LLC*
   No. 5:11cv1623 (C.D. Cal. filed Oct. 11, 2011).......................................................5

## TABLE OF AUTHORITIES
(continued)

Page

*FTC v. Staples, Inc.,*
   970 F. Supp. 1066 (D.D.C. 1997) ............................................................................. 11

*FTC v. Swedish Match N. Am., Inc.,*
   131 F. Supp. 2d 151 (D.D.C. 2000) .......................................................................... 11

*FTC v. Tenet Healthcare Corp.,*
   186 F.3d 1045 (8th Cir. 1999) .................................................................................. 12

*FTC v. Yellow Page Mktg BV*
   No. 1:11cv5035 (N.D. Ill. filed July 26, 2011) ......................................................... 5

*Go-Video, Inc. v. Akai Elec. Co.,*
   885 F.2d 1406 (9th Cir. 1989) .................................................................................... 6

*Goldlawr, Inc. v. Heiman,*
   288 F.2d 579 (2d Cir. 1961) .................................................................................... 6, 7

*GTE New Media Servs. Inc. v. BellSouth Corp.,*
   199 F.3d 1343 (D.C. Cir. 2000) ........................................................................ *passim*

*Icon Indus. Controls v. Cimetrix,*
   921 F. Supp. 375 (D. La. 1996) ............................................................................... 10

*In the Matter of Arch Coal, Inc., et al.,*
   Docket No. 9316 (FTC Jun. 13, 2005) ..................................................................... 11

*In the Matter of CCC Holdings Inc., and Aurora Equity Partners III L.P.,*
   Docket No. 9334, Order Dismissing Complaint (FTC March 13, 2009) ................. 10

*In the Matter of Equitable Resources, Inc., Dominion Resources, Inc., Consol. Natural Gas Co., and The Peoples Natural Gas Co.,*
   Docket No. 9322, Order Dismissing Complaint (FTC Feb. 4, 2008) ....................... 10

*In re Apple, Inc.,*
   602 F.3d 909 (8th Cir. 2010) .................................................................................... 19

*In re Laboratory Corp. of Am.,*
   Docket No. 9345 (Apr. 21, 2011) ............................................................................ 11

*In re Paul L. Foster, Western Refining, Inc., and Giant Industries, Inc.,*
   Docket No. 9323 (FTC Oct. 3, 2007) ...................................................................... 11

*In re Vitamins Antitrust Litig.,*
   94 F. Supp. 2d 26 (D.D.C. 2000) ............................................................................... 7

# TABLE OF AUTHORITIES
### (continued)

Page

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ............................................................................ 19

*Intrepid Potash-N.M., LLC v. U.S. Dep't of the Interior,*
    669 F. Supp. 2d 88 (D.D.C. 2009) ................................................................... 16

*Islamic Republic of Iran v. Boeing Co.,*
    477 F. Supp. 142 (D.D.C. 1979) ..................................................................... 15

*J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.,*
    534 U.S. 124 (2001) ........................................................................................ 8

*J. McIntyre Machinery v. Nicastro,*
    131 S. Ct. 2780 (2011) ..................................................................................... 3

*Kafack v. Primerica Life Ins. Co.,*
    934 F. Supp. 3 (D.D.C. 1996) ......................................................................... 15

*Kingsepp v. Wesleyan Univ.,*
    763 F. Supp. 22 (S.D.N.Y. 1991) ................................................................... 10

*Koh v. Microtek Int'l Inc.,*
    250 F. Supp. 2d 627 (E.D. Va. 2003) ............................................................. 18

*McCracken v. Automobile Club of S. Cal.,*
    891 F.Supp. 559 (D. Kan. 1995) .................................................................... 10

*Miller v. Holzmann,*
    2007 WL 39371 (D.D.C. Jan. 8, 2007) ............................................................ 3

*Miller v. Insulation Contractors, Inc.,*
    608 F. Supp. 2d 97 (D.D.C. 2009) .................................................................. 13

*Otay Mesa Prop., L.P. v. U.S.Dep't of Interior,*
    584 F. Supp. 2d 122 (D.D.C. 2008) ............................................................... 15

*Parkridge 6, LLC v. U.S. Dep't of Transp.,*
    772 F. Supp. 2d 5 (D.D.C. 2009) ................................................................... 14

*Reese Bros., Inc. v. United States Postal Serv.,*
    477 F. Supp. 2d 31 (D.D.C. 2007) ................................................................... 7

*Schmidt v. Am. Inst. of Physics,*
    322 F. Supp. 2d 28 (D.D.C. 2004) ............................................................ 15, 16

# TABLE OF AUTHORITIES
(continued)

**Page**

*SEC v. Bilzerian,*
    378 F.3d 1100 (D.C. Cir. 2004)............................................................................9

*SEC v. Daly,*
    No. 05-55 (CKK), 2006 WL 6190699 (D.D.C. Feb. 11, 2006) ............................18

*SEC v. Ernst & Young,*
    775 F. Supp. 411 (D.D.C. 1991)...........................................................................18

*Shapiro, Lifschitz & Schram, P.C. v. Hazard,*
    24 F. Supp. 2d 66 (D.D.C. 1998)..........................................................................15

*Stafford v. Briggs,*
    444 U.S. 527 (1980)................................................................................................9

*Treppel v. Reason,*
    793 F. Supp. 2d 429 (D.D.C. 2011).......................................................................20

*U.S. ex rel. Miller v. Bill Harbert International Construction, Inc.*
    608 F.3d 871, 887 (D.C. Cir. 2010).........................................................................3

*United States v. H&R Block, Inc.,*
    789 F. Supp. 2d 74 (D.D.C. 2011).............................................................14, 15, 16

*United States v. McGoff,*
    831 F.2d 1071 (D.C. Cir. 1987)...............................................................................8

*World Wide Minerals Ltd. v. Republic of Kazakhstan,*
    116 F. Supp. 2d 98 (D.D.C. 2000)...........................................................................7

**STATUTES**

15 U.S.C. § 53(b).............................................................................................................5

28 U.S.C. § 754................................................................................................................9

28 U.S.C. § 1391.....................................................................................................*passim*

28 U.S.C. § 1692..............................................................................................................9

D.C. Code Ann. §13-423(a).............................................................................................4

**OTHER AUTHORITIES**

*StarTribune 100: The 20th Annual Report,* Star Tribune,
    http://ww3.startribune.com/projects/st100/employeeView.php. .............................13

## TABLE OF AUTHORITIES
(continued)

**Page**

United States Courts, "Federal Court Management Statistics" (June 2011),
    http://www.uscourts.gov/viewer.aspx?doc=cgi-bin/cmsd2011Jun.pl. ...................................14

William H. Rehnquist, *The Prominence of the Delaware Court of Chancery in the State-Federal Joint Venture of Providing Justice*, 48 Bus. Law. 351, 354 (1992)..........................18

I.      INTRODUCTION

The FTC contends that it can sue in the District of Columbia (or anywhere else it chooses) each and every corporation doing business in the United States. Never mind that the defendant has no real contact with this District; never mind that the underlying facts have nothing to do with the District of Columbia; never mind the legitimate interest of other jurisdictions in this proceeding; and, most importantly, never mind the fundamental unfairness of the sweeping rule of law the FTC is advocating. The FTC's "wherever-we-choose" approach to jurisdiction and venue is at odds with the governing statutes and this Circuit's decision in *GTE New Media Services. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000), and should be rejected. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), sets out a two-step process to jurisdiction and venue. First, the government must show minimum contacts as required under the venue provision. Only then may it access Section 13(b)'s nationwide service provision. The government cannot meet the antecedent venue standard because Graco cannot be found in the District of Columbia and does not transact business here.

Even if Graco were present in this District, transfer under 28 U.S.C. §§ 1404(a) or 1406(a) would be warranted here. This case involves the sale of industrial products largely to the Midwest industrial base. Not surprisingly, the parties, the witnesses, and the evidence are Midwest centered. The FTC is incorrect in suggesting that evidence and witnesses are irrelevant because no evidentiary hearing on its motion is necessary. This merger rises or falls on the outcome of the preliminary injunction ruling. If an injunction is entered the deal will die (as all, or nearly all, mergers have done in similar circumstances). And where an injunction is denied, history teaches that an administrative retrial almost never follows. That is why almost all courts have allowed multi-day evidentiary hearings on preliminary injunctions in merger

cases, and this case is no different. Because an evidentiary hearing is here critical, witness

convenience and the other Section 1404(a) factors are material, and transfer is appropriate.

II.    ARGUMENT

    A.    THERE IS NEITHER JURISDICTION NOR VENUE IN THIS DISTRICT

    The FTC alleges no facts supporting jurisdiction or venue in this District. The complaint

contains only the bare conclusion that Graco "transacts business in this district" (Compl. ¶ 9),

and the FTC has submitted no affidavits or other evidence. The agency seems simply to have

assumed the District of Columbia an appropriate forum when it filed its complaint and now

seeks to patch over its mistake by advancing a novel legal theory that is patently incorrect.

    With regard to jurisdiction, the FTC cannot get around the base reality that Graco is not

present in this District. Def.'s Memo. of Law in Supp. of Mot. to Dismiss for Lack of Personal

Jurisdiction and Improper Venue and to Transfer ("Def.'s Mem."), at 3-7, ECF No. 31. The

FTC has not, and indeed could not, point to a single finishing product sale to a customer within

the District. Instead, it concocts a convoluted but ultimately aimless path in a desperate attempt

to show Graco contacts with the District. It points to Grainger, an international distributor not

owned or controlled by Graco, with a single location in Northeast D.C., whose sales contract

with Graco ██████████████████████████████████████████████████████

Decl. of Debra Backowski in Supp. of Graco's Reply in Supp. of its Mot. to Dismiss for Lack of

Personal Jurisdiction and Improper Venue and to Transfer, Dec. 27, 2011 (attached as Ex. 1) ¶ 5.

The FTC has not submitted a single affidavit, sales record, or invoice that shows that Grainger's

D.C. store actually purchased products from Graco. Nor could it. ██████████████████

██████████████████████████████████████████████████████

██████    Ex. 1 ¶ 5. Indeed, a review of the Graco products Grainger features on its website

shows that none are currently listed as available at Grainger's D.C. store. At most, some

products are listed as capable of being made available at that store within four days following an order. This suggests nothing more than the ability of District residents to access Grainger's website to place orders for Graco products to be indirectly delivered into the District. Where a similar (but more direct) situation has occurred, this Circuit has found a lack of personal jurisdiction. *GTE New Media Servs. Inc.*, 199 F.3d at 1349 ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."). Clearly, the FTC has failed to support its claim that Graco actively solicits business in the District.

The FTC's citation to *U.S. ex rel. Miller v. Bill Harbert International Construction, Inc.*, is inapropos. There, the D.C. Circuit held that U.S. courts had personal jurisdiction over a foreign company that was "'created by American citizens acting as agents for . . . American corporations, for the specific purpose of providing services to companies that were bidding on projects that were going to be funded by agencies of the United States.'" 608 F.3d 871, 887 (D.C. Cir. 2010) (quoting *Miller v. Holzmann*, No. 95-1231 (RCL/JMF), 2007 WL 39371, at *7-8 (D.D.C. Jan. 8, 2007)). That is a far cry from the facts relevant here, where Graco has a relationship with an independently-owned distributor who has a single branch location in the District that ███████████████████████████████████████████ ████████ Ex. 1 ¶ 5. The closer analogy is the decision of the U.S. Supreme Court in *J. McIntyre Mach. v. Nicastro*, 131 S. Ct. 2780, 2790 (2011), where the plurality held that a New Jersey federal court did not have personal jurisdiction over a company that sold its products through an independent national distributor; and found that the fact that "up to four" of the company's products ended up in the state through the distributor was insufficient to establish

3

"minimum contacts" for due process purposes. *Id.* at 2784 (also noting that the defendant "had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State").

Graco's sales within the District are *de minimus* ███████████████ The bulk of the sales were made to national companies headquartered outside of the District of Columbia, under contracts negotiated outside the District and governed by ████████████ Def.'s Mem. at 6. In late November 2011, Graco ███████████████████████ ███████████████████████████████ Ex. 1 ¶ 6. ████████████████ ████████████████████████████ *Id.* Graco also ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████ Ex. 1 ¶ 8.[1]

In short, Graco does not have minimum contacts in this jurisdiction. Accordingly, there is no jurisdiction under the Fifth Amendment to the United States Constitution and the District's Long-Arm Statute, D.C. Code Ann. §13-423(a). Nor does Graco "reside" or "transact business" in the District for purposes of Section 13(b) of the FTC Act and Section 12 of the Clayton Act (15 U.S.C. § 22), the particular venue provisions here applicable.

The FTC tries to justify its tactical choice of forum with an argument that is both circular and facile. The claim is that Section 13(b) provides nationwide process; such process, in turn, supplies personal jurisdiction; and thus 28 U.S.C. § 1391, which allows venue where there is "personal jurisdiction," is satisfied. That, of course, reads the statutory venue

---

[1] Graco's initial brief reported that ███████████████████████████████████████ ████████████████ of Graco's total U.S. sales. Def.'s Mem. at 6. Since then, Graco has identified ████████████████ Ex. 1 ¶¶ 6, 8), ████████████████████ of Graco's total U.S. sales through the end of November 2011 (Ex. 1 ¶ 9).

requirement (that the FTC cannot meet) entirely out of Section 13(b). Rather than being required to meet Congress' statutory prerequisite, the FTC would be enabled to sue all corporations doing business anywhere in the United States in any forum it chooses And that proposition is undercut by the FTC's own custom and practice: Second Request specifications which ask respondents (including Graco) to concede jurisdiction,[2] as well as a high percentage of cases filed by the FTC in federal courts outside of the District of Columbia.[3]

Neither 13(b) nor 28 U.S.C. § 1391 provide any textual basis for the FTC's position. The plain language of Section 13(b) requires that the FTC satisfy Section 13(b)'s specific venue requirements before obtaining the benefit of the nationwide service of process provision. Section 13(b) provides, in relevant part, that:

---

[2] Federal Trade Commission Request for Additional Information and Documentary Material, Specification 27 ("List (a) each federal judicial district (e.g., District of Columbia, Southern District of New York, etc.) within the United States in which the Company has an agent to receive services of process as well as each such agent's name, current business and home addresses, and telephone numbers; (b) each federal judicial district within the United States in which the Company is incorporated or licensed to do business or currently is doing business; and (c) each federal judicial district within the United States in which the Company has an office or facility, and, for each such office or facility, list the address and the Person in charge (with his or her title). [¶] Alternatively, the Company may respond to this Specification by providing a written stipulation that it agrees to accept service or process, and to subject itself to personal jurisdiction, in all federal districts within the United States.")

[3] For example, from July 2011 through the present, 13 out of 15 cases filed by the FTC in federal court were filed in districts outside of the District of Columbia. These cases include: *FTC v. Landmark Clearing, Inc.* No. 4:11cv826, (E.D. Tex. filed Dec. 15, 2011) (action brought under Section 13(b) of the FTC Act); *FTC v. OSF Healthcare Sys.,* No. 3:11cv50344 (N.D. Ill. filed Nov. 18, 2011) (complaint filed under seal); *FTC v. Rincon Mgmt Servs., LLC,* No. 5:11cv1623 (C.D. Cal. filed Oct. 11, 2011) (action brought under Sections 13(b) and 19 of the FTC Act and Section 814 of the Fair Debt Collection Practices Act ("FDCPA")); *FTC v. Leanspa, LLC,* No. 3:11cv1715 (D. Conn. filed Nov. 7, 2011) (action brought under Section 13(b) of the FTC Act and Section 917(c) of the Electronic Fund Transfer Act); *FTC v. Frostwire LLC,* No. 1:11cv23643 (S.D. Fla. filed Oct. 7, 2011) (action brought under 13(b) of the FTC Act); *FTC v. Frontier Publish. Inc.,* No. 8:11cv1537 (C.D. Cal. filed Oct. 5, 2011) (same); *FTC v. Reebok Int'l. Ltd,* No. 1:11cv2046 (N.D. Ohio filed Sept. 28, 2011) (same); *FTC v. Forensic Case Mgmt. Servs., Inc.* No. 2:11cv7484 (C.D. Cal. filed Sept. 12, 2011) (action brought under Sections 13(b) and 19 of the FTC Act and Section 814 of the FDCPA); *FTC v. Payday Fin., LLC,* No. 3:11cv3017 (D.S.D. filed Sept. 6, 2011) (action brought under Sections 13(b) and 19 of the FTC Act); *FTC v. Debt Relief USA Inc.,* No. 3:11cv2059 (N.D. Tex. filed Aug. 17, 2011) (action brought under Section 13(b) of the FTC Act); *FTC v. Yellow Page Mktg BV,* No. 1:11cv5035 (N.D. Ill. filed July 26, 2011) (same); *FTC v. Direct Benefits Group,* No. 6:11cv1186 (M.D. Fla. filed Jul. 18, 2011) (same); *FTC v. Nat'l Solutions LLC,* No. 6:11cv1131 (M.D. Fla. filed July 11, 2011) (action brought under 13(b) and 19 of the FTC Act and the Telemarketing and Consumer Fraud and Abuse Prevention Act). The two cases filed by the FTC in the District of Columbia since July 1, 2011 include the present case and *FTC v. Mallett,* No. 11-01664 (CKK), 2011 WL 4852228 (D.D.C. Oct. 13, 2011) (action brought under Sections 13(b) and 19 of the FTC Act and other statutes).

Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought. *In any suit under this section*, process may be served on any person, partnership or corporation wherever it may be found.

15 U.S.C. § 53(b) (emphasis added).

Literally "[a]ny suit under this section" filed by the FTC must first "be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28." *Id.* Only then is the FTC is authorized to effect service "on any person, partnership or corporation wherever it may be found." *Id.* This reading gives effect to the statute as a whole, and is compelled by the opening clause of the purported nationwide service of process provision: the phrase "[i]n any suit under this section" logically refers to a suit brought where a defendant "resides or transacts business, or wherever venue is proper . . ." *Id.*

The Court of Appeals for the District of Columbia has ruled that this is the correct interpretation of the virtually identical language found in Section 12 of the Clayton Act, a parallel venue and jurisdiction provision that the FTC invokes in its complaint. In *GTE New Media*, 199 F.3d 1343, the defendant, like Graco, did not have minimum contacts under the D.C. Long-Arm Statute and the Constitution. Plaintiff argued that venue could be obtained under either Section 12 itself or the general venue provision of 28 U.S.C. § 1391, and "that use of either route allows resort to Section 12's national jurisdiction provision." *Id.* at 1350-51. The court, in an opinion by Judge Edwards, soundly rejected plaintiff's position.

Aligning itself with the Second Circuit,[4] the court held that "[plaintiff] cannot avail itself

of Section 12's nationwide service clause" until it first meets the dictates of the venue clause:

> Section 12 "specifies where suit against a corporation under the antitrust laws may be
> brought, namely in a district where it is an inhabitant and also where 'it may be found or
> transacts business.' Conversely, it should follow that if a corporation is not an
> inhabitant of, is not found in, and does not transact business in, the district, suit may not
> be so brought. By statutory grant if suit is brought as prescribed in this section 'all
> process in such cases may be served in the district of which it [the corporation] is an
> inhabitant, or wherever it may be found.' Thus, 'in such cases,' Congress has seen fit to
> enlarge the limits of the otherwise restricted territorial areas of process. In other words,
> the extraterritorial service privilege is given only when the other requirements are
> satisfied.

*Id.* at 1351 (quoting *Goldlawr,* 288 F.2d at 581). In short, Section 12's limitation of the

nationwide service provision to "in such cases"—a limitation identical to that in Section 13(b)

—makes proper venue a ***precondition*** to the exercise of jurisdiction under that clause. *See also*

*World Wide Minerals Ltd. v. Republic of Kazakhstan,* 116 F. Supp. 2d 98, 107-08 (D.D.C.

2000) (performing a local contacts test to determine venue under the Clayton Act because *GTE*

*New Media* "expressly rejected" the notion that the national service provisions of the Clayton

Act "give" jurisdiction and instead "found that the Clayton Act required proper venue in order

to satisfy the jurisdictional requirements."); *In re Vitamins Antitrust Litig.,* 94 F. Supp. 2d 26, 27

n.2 (D.D.C. 2000) (reconsidering its prior use of a national contacts test under Section 12 of the

Clayton Act because under *GTE New Media,* "the language of Section 12 of the Clayton Act

that allows for worldwide service of process only "in such cases" means that the process

provisions may be used only in those cases in which the entire initial venue provision has been

---

[4] In *Goldlawr, Inc. v. Heiman,* the Second Circuit ruled that "the extraterritorial service privilege is given only when the other requirements are satisfied." 288 F.2d 579, 581 (2d Cir. 1961), *rev'd on other grounds,* 369 U.S. 463 (1962); *see also Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 424-25 (2d Cir. 2005) (holding "the extraterritorial service provision of Clayton Act Section 12 may be invoked to establish personal jurisdiction only when the requirements of the section's venue provision are satisfied."). The Court of Appeals for the D.C. Circuit rejected the Ninth Circuit's holding to the contrary, *Go-Video, Inc. v. Akai Elec. Co.,* 885 F.2d 1406 (9th Cir. 1989), commenting that the Ninth Circuit's "sweeping interpretation" and "literal convolutions" made the venue provision "wholly redundant." *GTE New Media Servs. Inc.,* 199 F.3d at 1351.

satisfied"); *see generally Reese Bros., Inc. v. U.S. Postal Serv.*, 477 F. Supp. 2d 31, 39 (D.D.C. 2007) (discussing the interpretation of the nationwide service of process clause in the Clayton Act to aid its interpretation of the Federal Debt Collection Procedures Act and observing that "though both [the Clayton Act and the RICO Statute] allow for nationwide service of process, they still require minimum contacts with the local district"); *Poling v. Farrah*, 131 F. Supp. 2d 191, 193 (D.D.C. 2001) (following the approach set forth by the D.C. Circuit in *GTE New Media* and finding that "service of process provision Section 27 [of the Securities and Exchange Act] by itself cannot give the Court personal jurisdiction over [Defendant], because that provision necessarily is limited by the requirements of the venue provision contained within Section 27 [of the Securities Exchange Act].").

The FTC's interpretation of Section 13(b) fails under the *GTE New Media* analysis. The FTC is entitled to nationwide service and jurisdiction based thereon only if venue is proper. And venue is not proper in this case for the same reasons that jurisdiction under the D.C. Long-Arm Statute and the Constitution does not lie. As did plaintiffs' proposed interpretation of Section 12 in *GTE New Media*, the FTC's reading of Section 13(b) renders meaningless the threshold venue requirement. Congress would have had no need specifically to prescribe venue as where defendants "reside or transact business or wherever venue is proper under section 1391 of Title 28." 15 U.S.C. § 53(b). Nor would it be necessary for Congress to authorize suit against any other entity "without regard to whether venue is otherwise proper in the district in which the suit is brought." *Id.* If the FTC's interpretation were correct, these statutory pre-conditions to jurisdiction would be rendered meaningless by the Commission simply ignoring them and proclaiming nationwide service of process regardless. Such a result ignores well-accepted canons of statutory construction that require that "statutes must be construed in their

entirety, so that the meaning of one provision sheds light upon the meaning of another." *J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 146 (2001) (Scalia, J., concurring).[5]

The sole Section 13(b) case that the FTC cites recognizes that "[u]nder Section 13(b) of the FTC Act, the propriety of nationwide service of process is tied in part to the question of proper venue" and finds jurisdiction solely on the ground that the defendant (who did not even defend the case) failed to raise an objection to the FTC's chosen forum. *FTC v. Mallett*, No. 11-01664, 2011 WL 4852228, at *4 n.4 (D.D.C. Oct. 13, 2011) ("Because Mallett has failed to oppose the FTC's Motion for a Preliminary Injunction or otherwise raise an objection to the FTC's chosen forum, the Court shall assume, without deciding, that venue in this District is proper.").

The other jurisdictional authority cited by the FTC does not support its position. The FTC's cases either do not reach or actually lend support to the critical proposition here, *i.e.*, that nationwide service of process is appropriate only *after* the plaintiff meets the antecedent requirements of the federal statute at issue. In *Briggs v. Goodwin*, 569 F.2d 1, 7-8 (D.C. Cir. 1977), *rev'd on other grounds sub nom., Stafford v. Briggs*, 444 U.S. 527 (1980), the court first assessed the propriety of venue under Section 1391(e) and then turned the jurisdictional question of whether process had been properly served. *Id.* (Section 1391 "empowers the district courts to make valid service outside the district *whenever venue lies by virtue of Section 1391(e).*") (emphasis added). The purpose of the nationwide service provision was, the court explained, to give effect to the breadth of the venue provision. *Id.* ("That venue exists in a

---

[5] *See also, e.g., United States v. McGoff*, 831 F.2d 1071, 1081 (D.C. Cir. 1987) ("The Government's reading is . . . objectionable because it isolates [one provision of the section] from the rest of the statute . . . . As the Supreme Court has instructed, 'it is well settled that, in interpreting a statute, the court will not look merely to a particular clause . . . but will take in connection with it the whole statute . . . .'") (quoting *Brown v. Duchesne*, 60 U.S. 183, 194 (1857)).

particular district would hardly console a plaintiff unable to serve officials who . . . had

withdrawn beyond the limits of effective service."); *see also SEC v. Bilzerian*, 378 F.3d 1100,

1103 (D.C. Cir. 2004) (to invoke the nationwide service of process provision of 28 U.S.C. §

1692, "a receiver *must first comply* with 28 U.S.C. § 754," which requires that the receiver file

copies of the complaint and the appointment order in the district court for each district in which

property is located) (emphasis added).[6]  In *Bally Gaming, Inc. v. Kappos*, 789 F. Supp. 2d 41,

47 (D.D.C. 2011), the court distinguished its jurisdictional analysis under patent law from the

proper analysis in a Clayton Act suit based on this very principle.  Section 12 of the Clayton Act,

explained the court, "'require[s] proper venue in order to satisfy jurisdictional requirements.'"

*Id. at* 47 (quoting *World Wide Minerals*, 116 F. Supp. 2d at 107-08).

When the FTC does finally address the issue of venue, it argues that "Courts have

*generally* adopted the plain meaning of 28 U.S.C. § 1391: If a defendant corporation is subject

to the court's personal jurisdiction by virtue of a nationwide service of process statute, the

defendant corporation resides in that district for purposes of venue."  Pl.'s Opp. to Def.'s Mot.

to Dismiss for Lack of Personal Jurisdiction and Improper Venue and to Transfer ("Pl.'s Opp.")

at 6, ECF No. 24.  The FTC does not cite or discuss the D.C. Circuit's contrary and dispositive

authority in *GTE New Media*.  Instead it cites to three district court opinions from the 1990s

(Kansas, New York, and Louisiana),[7] all of which are unavailing because "[t]he only circuit that

matters for this Court is the D.C. Circuit."  *Bally*, 789 F. Supp. 2d at 47.

---

[6] In *Boland v. Fortis Construction*, 796 F. Supp. 2d 80 (D.D.C. 2011), cited in Pl.'s Opp. at 4, the court had no
need to reach this question because plaintiff had met ERISA's statutory requirement of showing that suit was being
"brought in the district where the plan is administered." *Id.* at 91.
[7] *Kingsepp v. Wesleyan Univ.*, 763 F. Supp. 22, 28 (S.D.N.Y. 1991); *McCracken v. Auto. Club of S. Cal.*, 891 F.
Supp. 559, 562-63 (D. Kan. 1995); *Icon Indus. Controls v. Cimetrix, Inc.* 921 F. Supp. 375, 376-77, 382 (D. La.
1996).

In short, the FTC is not entitled to nationwide service of process absent a showing that it has satisfied Section 13(b)'s venue provision, which in this case it has not done.

## B.   THE INTERESTS OF JUSTICE AND CONVENIENCE OF THE PARTIES AND WITNESSES FAVOR TRANSFER TO THE DISTRICT OF MINNESOTA

Before addressing the factors in favor of transfer, it is important to dispose of the FTC's assertion that no evidentiary hearing should take place.   Contrary to the FTC's wishful implication, the preliminary injunction motion is not simply a prelude to a full administrative trial.   To our knowledge, since the passage of the Hart-Scott-Rodino Act, no administrative hearing has ever been determinative of a proposed merger.[8]   It is the preliminary injunction hearing that **determines** the fate of proposed mergers because corporate transactions cannot

---

[8] *See, e.g.* Order Dismissing Complaint, *In the Matter of CCC Holdings Inc.*, Dkt. No. 9334, (FTC March 13, 2009), *available at* http://www.ftc.gov/os/adjpro/d9334/index.shtm (noting that Respondents CCC Holdings Inc. and Aurora Equity Partners III L.P. announced the previous day in a joint motion that they had decided not to proceed with the proposed merger); Order Dismissing Complaint, *In the Matter of Equitable Res., Inc.*, Dkt. No. 9322, (FTC Feb. 4, 2008), *available at* http://www2.ftc.gov/os/adjpro/d9322/index.shtm (noting that the U.S. Court of Appeals for the Third Circuit granted the Commission's motion for an injunction pending appeal after the U.S. District Court for the Western District of Pennsylvania denied the Commission's motion for a preliminary injunction against the Respondents, and that Respondents then decided to abandon their proposed merger). *See, e.g., FTC v. Foster*, No. 07-352 JBACT, 2007 WL 1793441, at *51 (D.N.M., May 29, 2007) ("The need for caution in issuing a preliminary injunction is particularly important in the merger and acquisition context because 'the grant of a temporary injunction in a Government antitrust suit is likely to spell the doom of an agreed merger.") (quoting *FTC v. Great Lakes Chem. Corp.*, 528 F. Supp. 84, 86 (N.D. Ill. 1981); Robert C. Jones and Aimee E. DeFilippo, FTC Hospital Merger Challenges: Is a "Fast-Track" Administrative Trail the Answer to the FTC's Federal Court Woes?, THE ANTITRUST SOURCE, Dec. 2008 at 4-5 ("No Firm has continued to litigate a merger against the FTC after losing the preliminary injunction motion and its appeal, if any."); Robert Pitofsky and Michael N. Sohn, PO72104 - Part 3 and 4 Rules of Practice Rulemaking (comments submitted to the FTC on P072104; 16 C.F.R. Parts 3 and 4 Rules of Practice Regarding Adjudicative Proceedings) Nov. 6, 2008, at 6-7, available at http://www.ftc.gov/os/comments/part3and4rules/538311-00004.pdf ("We are not aware of a single instance in which the merging parties, having lost a preliminary injunction proceeding brought by the FTC, tried to preserve their deal, while litigating the administrative trial on the merits before the Commission."); David Balto, The Efficiency Defense in Merger Review: Progress or Stagnation?, ANTITRUST, Fall 2001, at 79 ("The reality is that, with one exception, no firm has ever continued to litigate a merger in administrative litigation with the FTC after losing the preliminary injunction motion. The costs and difficulty of keeping a merger agreement together are simply too great") (Balto does not identify the one case).

survive a lengthy administrative hearing.  Indeed, after losing a motion for preliminary

injunction in federal court, the FTC generally dismisses its administrative proceeding.[9]

An FTC administrative hearing, followed by appeal to the Commission, is a lengthy

process.  As a practical matter, few, if any, mergers could survive such delay, and none to date

have done so.  This proposed transaction has been before the FTC since April.  It is now

December, some eight months later.  The administrative hearing will not even start until May 15,

2012, five months from now.  The parties must proceed through that process, await the ALJ

decision, and then litigate an  appeal to the Commission by the losing side. Thereafter they must

await the Commission's decision.[10]  Thus, an administrative proceeding would take at minimum

an additional twelve months and more likely eighteen months or more.[11]  The company or

division being purchased cannot be placed in limbo for such a lengthy period of time, nor can

financing commitments be maintained.  Thus, in the real world, transactions are abandoned in

the event a court enters an injunction in a case like this.  A defendant's only opportunity for a

---

[9] *Hearing on Federal Civil Remedies for Antitrust Offenses Before the Antitrust Modernization Commission* at 6 (Dec. 1, 2005) (statement of Thomas B. Leary), *available at* http://www.ftc.gov/speeches/leary/051201civilremedies.pdf ("Since 1995, the FTC has had in place a policy that narrowly restricts its ability to pursue administrative litigation following a loss in federal court, and the FTC has never done so since the policy statement was issued.) *See, e.g.*, Commission Order Returning Matter to Adjudication and Dismissing Complaint, *In re Laboratory Corp. of Am.*, Dkt. No. 9345 (FTC Apr. 22, 2011); Statement of the Commission Concerning Dismissal of the Administrative Complaint at 1, *In re Paul L. Foster,* Dkt. No. 9323 (FTC Oct. 3, 2007), *available at* http://www.ftc.gov/os/adjpro/d9323/071003statement.pdf; Statement of the Commission, *In the Matter of Arch Coal, Inc.,* Dkt. No. 9316 (FTC Jun. 13, 2005), *available at* http://www.ftc.gov/os/adjpro/d9316/050613commstatement.pdf (ending administrative litigation following denial of preliminary injunction by district court, and denial of an injunction pending appeal by the court of appeals).
[10] *See* FTC Rules of Practice ¶¶ 3.41 (allowing a hearing of 210 hours, typically lasting six to nine weeks), 3.46 (post-hearing briefing of 31 total days), 3.51 (initial 70-days to decision, with 30-day extension); appeal to the FTC with a minimum of 45 days), Commission decision then within 100 days of any reply brief filed as part of the appeal process.
[11] The rule changes as described *supra* n. 9, were designed to shorten the administrative process but do so only incrementally.  For example, the FTC filed its administrative complaint in the ProMedica case almost one year ago (January 6, 2011), and the Commission has not even heard the case yet.  See http://www.ftc.gov/os/adjpro/d9346/index.shtm.  Previously the average time between an initial ALJ decision and a final Commission decision was more than 20 months.  *See supra* Jones and DeFillippo, n.8 at pp. 8-9 (A review of the FTC's last seven matters in which the Commission issued a decision showed an average time from the initial decision to the Commission's final order of 21.6 months).

hearing and its day in court in a proposed merger case involving the FTC is before a federal district court judge.

Recognizing that practical reality, courts typically hold multi-day evidentiary hearings. For example, Judge Hogan held an evidentiary hearing in *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1069 (D.D.C. 1997) (five days) and *FTC v. Swedish Match*, 131 F. Supp. 2d 151, 155 (D.D.C. 2000) (five days). In *FTC v. Butterworth Health Corp.*, 946 F. Supp. 1285, 1288 (W.D. Mich. 1996) (five day evidentiary hearing, and touring of hospitals at issue) (Judge McKeague), *aff'd mem.*, 121 F.3d 708 (6th Cir. 1997), and in *FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1048 (8th Cir. 1999) (noting the E.D. Mo. held a five-day evidentiary hearing) the courts similarly held multi-day hearings. In *FTC v. Cardinal Health, Inc.*, Judge Sporkin held a seven-week evidentiary trial. 12 F. Supp. 2d 34, 44 (D.D.C. 1998). Judge Robertson held an evidentiary hearing in *FTC v. H.J. Heinz, Co.*, 116 F. Supp. 2d 190, 192 (D.D.C. 2000) (five days). Judge Bates held an extensive evidentiary hearing in *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 114 (D.D.C. 2004) (a two-week evidentiary trial); *see also FTC v. Foster*, No. CIV 07-325 JBACT, 2007 WL 1793441 (D.N.M. May 29, 2007) (a five day evidentiary hearing held by Judge Browning); *FTC v. CCC Holdings Inc.*, 605 F. Supp. 2d 26, 31 (D.D.C. 2009) (a nine day evidentiary hearing ordered by Judge Collyer).

The FTC's assertion that an evidentiary hearing is unnecessary, aside from being incorrect, is a red herring. The court is vested with the discretion to transfer a case in the interests of justice and for the convenience of the parties and witnesses. Both considerations are best served by transfer to the District of Minnesota. The FTC is challenging a merger between two companies that largely serve the Midwest industrial base. Not surprisingly, both companies

as well as their distributors and customers are concentrated in that region.  Witness convenience

as well as the other 404(a) factors weigh in favor of transfer.

    1.    Local Interest

Graco is a Minnesota corporation, headquartered in Minnesota. Ex. 1 ¶ 3.  Three of

Graco's five U.S. liquid finishing manufacturing facilities are located in Minnesota. *Id.*  The

remaining two are also located in the Midwest, in South Dakota and Ohio. *Id.*  Graco's

finishing manufacturing management team, its industrial products divisional management team,

all but two members of its finishing sales and marketing management team, and all but two

executives (international vice presidents) are all located in Minnesota. *Id.*  Graco's finishing

engineering and product development department, its industrial products controller and

accounting support, its purchasing department, its main distribution and logistics department, its

planning department for the industrial products division, its information systems support, its

legal function, and its corporate communications department are also all located in Minnesota.

*Id.*  Graco's proposed acquisition of the finishing products division of ITW was negotiated and

agreed upon in Minnesota. Ex. 1 ¶ 4.

In short, the FTC is challenging a Minnesota-negotiated transaction that directly affects

the business of a Minnesota-centric company.  As one of the top 50 largest employers in

Minnesota, Graco's ability to expand its product lines and grow its business is of keen interest

to the state.[12]

There is no claim that this controversy is of any local interest to the District of Columbia.

*See* Pl.'s Opp. at 8.  The FTC's contention, rather, is that the acquisition's effects "will

reverberate nationwide." *See* Pl.'s Opp. at 8.  But, as Graco has shown, none of the finishing

---

[12] *StarTribune 100: The 20th Annual Report,* Star Tribune,
http://ww3.startribune.com/projects/st100/employeeView.php.

products that are the subject of the challenged transaction are sold in the District of Columbia. The FTC cannot manufacture appropriate venue in a district without relevant contacts to the dispute out of an ill-defined and unsupported "nationwide" effect.

2.     Court Congestion and Familiarity with Governing Law

This District does not have a monopoly on antitrust or administrative law. "[A]ll federal courts are presumed to be equally familiar with the law governing federal statutory claims." *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 103 (D.D.C. 2009) (internal citation omitted). The FTC regularly files antitrust cases outside of this District, including merger cases. During 2011, such cases were filed in Illinois, Ohio, and Georgia. *See, e.g., FTC v. OSF Healthcare Sys.*, No. 11-cv-50344 (N.D. Ill. filed Nov. 18, 2011); *FTC v. ProMedica Health Sys., Inc.*, No. 3:11CV47, 2011 WL 1219281 (N.D. Ohio Mar. 29, 2011); *see also FTC v. Phoebe Putney Health Sys. Inc.*, 793 F. Supp. 2d 1356 (M.D. Ga. 2011).

Any suggestion that Minnesota courts lack familiarity with the federal antitrust laws is especially perplexing since the District of Minnesota recently presided over two very important antitrust cases, including a merger case brought by the FTC. *See Brady v. Nat'l Football League*, 779 F. Supp. 2d 992 (D. Minn. 2011) (action by NFL players alleging that the owners' "lockout" constituted an illegal boycott under the antitrust laws), *rev'd*, 644 F.3d 661 (8th Cir. 2011); *FTC v. Lundbeck, Inc.*, No. 08-6379 (JNE/JJG), 2010 WL 3810015 (D. Minn. Aug. 31, 2010) (FTC action challenging a consummated merger), *aff'd*, 650 F.3d 1236 (8th Cir. 2011).

Court congestion is not an issue. The median time from filing to trial in civil cases is more than a year shorter in Minnesota than in this District, and "courts evaluate the congestion

factor on the basis of 'potential speed of resolution' rather than filings per judge." *Parkridge 6,*

*LLC v. U.S. Dep't of Transp.*, 772 F. Supp. 2d 5, 9 n. 5 (D.D.C. 2009).[13]

      3.    Plaintiff's Choice of Forum

      The FTC fails to give effect to what this Court has labeled a "critical limitation" on the

FTC forum choice: deference is afforded "[i]f the particular controversy has meaningful ties to

the forum, and the plaintiff is a resident of that forum." *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d

21, 26 (D.D.C. 2008); *see also United States v. H&R Block, Inc.*, 789 F. Supp. 2d 74, 78–79

(D.D.C. 2011) ("Deference to the plaintiff's chosen forum is minimized, however, where that

forum has no meaningful connection to the controversy."); *Otay Mesa Prop., L.P. v. U.S. Dep't*

*of Interior*, 584 F. Supp. 2d 122, 125 (D.D.C. 2008), *rev'd on other grounds*, 646 F.3d 914 (D.C.

Cir. 2011) ("Plaintiff's choice [of forum] is entitled to less deference where the connection

between plaintiffs, the controversy and the chosen forum is attenuated.") (internal quotation

marks and citations omitted); *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 33 (D.D.C.

2004) ("[D]eference [to the plaintiff's choice of forum] is mitigated . . . where the plaintiff's

choice of forum has no meaningful ties to the controversy and no particular interest in the

parties or subject matter.") (internal quotation marks and citations omitted).

      The FTC misconstrues this limitation entirely.  A connection between the forum and

controversy turns on whether there are any "meaningful ties between the District of Columbia

and the events (or parties) that gave rise to th[e] action." *Cephalon*, 551 F. Supp. 2d at 26 ; *see*

*also H&R Block, Inc.*, 789 F. Supp. 2d at 79 (evaluating whether "facts underlying the

complaint took place here"); *Schmidt*, 322 F. Supp. 2d at 33 (finding no meaningful ties to the

---

[13] *See* Administrative Office of the United States Courts, "Federal Court Management Statistics" (June 2011), http://www.uscourts.gov/viewer.aspx?doc=cgi-bin/cmsd2011Jun.pl. Courts use both median time to trial and median time to disposition to evaluate "potential speed of resolution." See *Parkridge 6*, 772 F. Supp. 2d at 9 fn 5. The median time to disposition is similar in D.C. and Minnesota.

District of Columbia where "the material events that constitute the factual predicate for the plaintiff's claims" occurred in Maryland) (quoting *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 6–7 (D.D.C. 1996)); *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998) (analyzing the defendant's choice of forum in light of the "connections" between the "events underlying the plaintiff's action" and the proposed forum); *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979) (concluding that the District of Columbia had no meaningful ties to a pending controversy because "all operative facts giving rise to the litigation occurred elsewhere").

The FTC points to no nexus between the District and the controversy. Graco does *de minimus* business in the District of Columbia, all involving products that have nothing to do with this case or the effects of the acquisition.

    4.    Defendant's Proposed Forum

This Court has accorded deference to the defendant's suggested forum where, as here, "a majority of material events" underlying the action occurred in that forum. *Schmidt*, 322 F. Supp. at 34; *Intrepid Potash-N.M., LLC v. U.S. Dep't of the Interior*, 669 F. Supp. 2d 88, 95 (D.D.C. 2009) ("Transfer is supported when the material events that constitute the factual predicate for the plaintiff's claims occurred in the transferee district.") (internal quotation marks and citations omitted).

Unlike in *H&R Block*—where a public-private partnership with the Internal Revenue Service central to the case helped establish a meaningful connection to the District of Columbia, *H&R Block, Inc.*, 789 F. Supp. 2d at 79—the facts here align more closely with *Cephalon*. There, Judge Bates concluded that deference should be accorded to the defendant's choice of the Eastern District of Pennsylvania as a forum because:

17

Cephalon's primary base of operations is in the Eastern District of Pennsylvania. It is a Delaware corporation that merely maintains a very small public affairs office in the District of Columbia. None of the negotiations that led to the settlement agreements at the heart of this controversy took place in, or were in any other way related to, the District.

*Cephalon*, 551 F. Supp. 2d at 26. Graco is a Minnesota corporation (Ex. 1 ¶ 3), its primary base of finishing operations is in Minnesota (Ex. 1 ¶ 5); and the proposed transaction at the "heart" of this action was negotiated and agreed upon in Minnesota (Ex. 1 ¶ 4). The defendants' suggested forum should be afforded deference.

        5.      Convenience of Witnesses and Parties

        a.      Third-Party Witnesses

There typically are evidentiary hearings on preliminary injunction motions in merger cases. See supra 13. Graco certainly plans to call third-party witnesses to testify. The convenience of Graco's potential third-party witnesses is appreciably different as between D.C. and Minneapolis.



Def.'s Mem., Ex. 1, App. E; U.S. Census Bureau, Census Regions and Divisions of the United States, http://www.census.gov/geo/www/us_regdiv.pdf (last visited Dec. 24, 2011) ("U.S. Census Bureau - U.S. Regions") (listing states that constitute U.S. regions).

Minneapolis is likewise more convenient for the FTC's potential witnesses.

[BLACK REDACTED BLOCK] *See* FTC's Memo. in

Supp. of Mot. for Temporary Restraining Order and Preliminary Injunction ("FTC's Mem.")

Exs. PX200-02 & 204-20, ECF No. 28; U.S. Census Bureau - U.S. Regions.

That the overwhelming majority of potential third-party witnesses for both Graco and

the FTC are located in the Midwest is not surprising.  Graco is based in Minnesota and ITW in

Illinois.  All of the Graco witnesses likely to be called are located in the District of Minnesota or

nearby jurisdictions.  Manufacturers and distributors of liquid finishing products are

concentrated where the end users are located, primarily in the industrial Midwest.  "[I]t is

permissible to infer, absent any contrary evidence from the non-movant, that witnesses are

located at or near the center of the . . . activities [in question]."  *Koh v. Microtek Int'l Inc.,* 250 F.

Supp. 2d 627, 636 (E.D. Va. 2003).

> b.      Parties

The FTC argues that the trial might cost more if it were in Minneapolis.  While cost for

the government may be a factor in balancing convenience, so, too, are costs for defendants, for

whom litigating outside their home district would be more expensive.  Graco and ITW are both

Midwestern companies.  Moreover, as discussed above, most of the relevant witnesses,

including key Graco and ITW employees, are located in the Midwest.

Certainly the FTC counsel and staff are located here.  But this factor carries "little, if any,

weight" in considering transfer.  *Cephalon*, 551 F. Supp. 2d at 28.  *See also SEC v. Daly*, No.

05-55 (CKK), 2006 WL 6190699, at *6 n.2 (D.D.C. Feb. 11, 2006); *SEC v. Ernst & Young*, 775

F. Supp. 411, 415 (D.D.C. 1991) ("If such relatively minor concerns were able to defeat a

motion to transfer, then every enforcement action, regardless of where the underlying events

took place, would be entertained in this District simply because the agency is located here. This Court would be inundated.").

> c.      Forum Selection Clause

The FTC's assertion that the standard Delaware forum selection clause in the parties' Asset Purchase Agreement supports venue in the District of Columbia is erroneous. The selection of the Delaware Court of Chancery to interpret corporate transaction documents is common, reflecting that court's unique experience in such matters. *See* William H. Rehnquist, *The Prominence of the Delaware Court of Chancery in the State-Federal Joint Venture of Providing Justice*, 48 Bus. Law. 351, 354 (1992) ("Corporate lawyers across the United States have praised the expertise of the [Delaware] Court of Chancery, noting that since the turn of the century, it has handed down thousands of opinions interpreting virtually every provision of Delaware's corporate law statute. No other state court can make such a claim."). Moreover, any contractual dispute adjudicated in Delaware under the forum selection clause would likely have implicated only the testimony of the few people who negotiated the Asset Purchase Agreement. Here,



And both the FTC and Graco have

> 6.      Access to Evidence

Virtually all of Graco's relevant documentary evidence undisputably is located in its Minneapolis headquarters. In considering motions to transfer, other circuits have recently recognized that technological advancements do not eliminate ease of access to evidence in the district in which the transfer movant is headquartered. *See In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010), *cert. denied,* 131 S. Ct. 838 (2010) ("While electronic filing may lessen the

inconvenience of document handling, if the need arises to refer to original documents or evidence in the litigation, [the district where the movant was headquartered] would prove more convenient."); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008), *cert. denied*, 555 U.S. 1172 (2009) (rejecting the district court's conclusion that "the relative ease of access to sources of proof is neutral because of advances in copying technology and information storage," the court of appeals found: "[t]hat access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous. All of the documents and physical evidence relating to the [matter] are located in the [district where the movant was headquartered]. Thus, the district court erred in applying this factor because it does weigh in favor of transfer."). Though this Court has acknowledged that the access to proof analysis has changed with electronic discovery, *see Fanning v. Capco Contractors, Inc.*, 711 F. Supp. 2d 65, 70 (D.D.C. 2010), the FTC is wrong to claim that this factor "does not bear scrutiny" (*see* Pl.'s Opp. at 15)—the courts continue to weigh access to proof in venue transfer decisions. *See, e.g., Treppel v. Reason*, 793 F. Supp. 2d 429, 438 (D.D.C. 2011) (noting that technological advances have reduced the significance of access to proof, but nevertheless holding that this factor weighed in favor of transfer).

III.   CONCLUSION

For the reasons set forth above, this Court should dismiss the complaint and grant the defendant's Motion to Transfer Venue to the District of Minnesota.

DATED: December 28, 2011

Respectfully submitted,

_____
RICHARD G. PARKER (DCBN 327544)
MICHAEL E. ANTALICS (DCBN 475218)

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)

Of Counsel:

JOHN H. HINDERAKER
RICHARD A. DUNCAN

Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7000
(612) 766-1600 (fax)

Attorneys for Graco Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 28, 2011, I have caused the foregoing Reply in Support of Graco's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and to Transfer to be served by email upon Phillip Broyles (pbroyles@ftc.gov), Peter Richman (prichman@ftc.gov), Mark Schneider (mschneider@ftc.gov), and Amanda Hamilton (ahamilton1@ftc.gov) of the Federal Trade Commission; and upon J. Robert Robertson (robby.robertson@hoganlovells.com), counsel for Illinois Tool Works Inc. and Illinois Tool Works Finishing LLC.

KATRINA M. ROBSON (DCBN 989341)
Attorney for Graco Inc.
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)