**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **FEDERAL TRADE COMMISSION**, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No. 1:11-CV-02239 (RLW) |
| **GRACO INC.**, *et al.,* | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT GRACO'S MOTION
TO DISMISS OR TRANSFER:
RESPONSES TO THE COURT'S QUESTIONS**

*Table of Contents*

INTRODUCTION ........................................................................................................................ 1

    I.      Both ITW Defendants Are Proper Parties to This Action ............................................ 1

           *A.  Section 5 of the FTC Act and Sherman Act Principles* ........................................... 2

           *B.  Section 5 of the FTC Act and Clayton Act Principles*............................................ 3

           *C.  The ITW Defendants are Proper Parties* ................................................................. 6

    II.     The ITW Defendants are Bound by Their Stipulation to Personal Jurisdiction and Venue ................................................................................................................................. 6

    III.    The Court Should Grant Jurisdictional Discovery Before Dismissing or Transferring this Case ..................................................................................................................... 9

CONCLUSION............................................................................................................................ 10

*Table of Authorities*

<u>Cases</u>

*Am. Fin. Serv. Ass'n. v. FTC*, 767 F.2d 957 (D.C. Cir. 1985) .......................................................... 4

*Barbour v. Medlantic Mgmt. Corp.*, 952 F.Supp. 857 (D.D.C. 1997) ............................................. 8

*Chicago Bridge & Iron Co.*, D-9300, 2005 FTC LEXIS 215 (Jan. 6, 2005) ................................... 5

*Crenshaw v. Antokol*, 287 F. Supp. 2d 37 (D.D.C. 2003) ................................................................ 5

*Dean Foods, Inc.*, D-8674, 1966 FTC LEXIS 32 (Nov. 14, 1966) ................................................... 4

*FDIC v. St. Paul Fire and Marine Ins. Co.*, 942 F.2d 1032 (6th Cir. 1991) ..................................... 8

\**Fiat Motor Co. v. Alabama Imported Cars, Inc.*, 292 F.2d 745 (D.C. Cir. 1961) ....................... 10

*FTC v. Brown Shoe Co.*, 384 U.S. 316 (1966) .................................................................................. 2

*FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965) ....................................................................... 4

\**FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447 (1986) ................................................................ 2

*FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972) ................................................................... 2

*GTE New Media Svcs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ......................... 10

\**Seifert v. Winter*, 555 F. Supp. 2d 3 (D.D.C. 2008) ....................................................................... 9

\**U.S. v. Am. Bldg. Maint. Indus.*, 422 U.S. 271 (1975) ................................................................ 3, 4

*U.S. v. E. I. du Pont de Nemours*, 353 U.S. 586 (1957) .................................................................. 5

\**U.S. ex rel. Miller v. Bill Harbert Int'l Constr.*, 608 F.3d 871 (D.C. Cir. 2010) ........................... 8

*U.S. v. Phillips Petroleum Co.*, 367 F. Supp. 1226 (C.D. Cal. 1973) .............................................. 5

\**U.S. v. Rockford Mem'l Corp.*, 898 F.2d 1278 (7th Cir. 1990) ..................................................... 3

*Yamaha Motor Co. v. FTC*, 657 F.2d 971 (8th Cir. 1981) ............................................................... 4

Statutes

Section 1 of the Sherman Act, 15 U.S.C. § 1 ................................................................................ 2

Section 5 of the FTC Act, 15 U.S.C. § 45 ............................................................................. *passim*

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) .................................................................. 1, 5, 6

28 U.S.C. § 1391(c)(2) ................................................................................................................ 5, 6

Rules

*Fed. R. Ev. 201(b) ......................................................................................................................... 9

Miscellaneous

Complaint, *U.S. v. H&R Block*, No. 11-00948 (D.D.C. May 23, 2011),
http://www.justice.gov/atr/cases/f271500/271579.htm .................................................................. 6

Complaint, *U.S. v. VISA U.S.A. Inc.*, No. 98-7076 (S.D.N.Y. Oct. 7, 1998),
http://www.justice.gov/atr/cases/f1900/1973.htm ......................................................................... 2

INTRODUCTION

The Court asked the parties to address two questions: (1) Are the ITW Defendants proper parties to this action? and (2) Are the ITW Defendants bound by their stipulation to personal jurisdiction and thereby venue in this district?  The answer to both questions is yes.

The Defendants' Supplemental Memorandum in Support of Graco's Motion to Dismiss and Transfer ("Joint Brief") underscores one important concession: Illinois Tool Works Inc. ("ITW"), parent of ITW Finishing LLC ("ITWF") and a necessary party to the Asset Purchase Agreement that underlies this action, is subject to the personal jurisdiction of this Court.  The remainder of the Joint Brief primarily relies on claims that are factually or legally incorrect. Most notably, Defendants implausibly deny that ITWF stipulated to personal jurisdiction.  The letter in which the stipulation appeared, the definitions in the FTC's Request for Additional Information ("Second Request") to which the stipulation responded, and the surrounding correspondence establish otherwise.  Finally, the Joint Brief avoids answering either of the Court's questions.

I.   Both ITW Defendants Are Proper Parties to this Action

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), ("Section 13(b)"), authorizes the FTC to seek a preliminary injunction to prevent a violation of Section 5 of the FTC Act, 15 U.S.C. § 45, ("Section 5"), prior to completion of an administrative proceeding on the antitrust merits of the conduct in question.  This action is such a 15 U.S.C. § 53(b) proceeding.  The FTC seeks to enforce Section 5, which prohibits unfair methods of competition.

As the Supreme Court has held:

The standard of "unfairness" under the FTC Act . . . encompass[es] not only practices that violate the Sherman Act and the other antitrust laws, but also practices that the Commission determines are against public policy for other reasons.  15 U.S.C. § 45(a)(2).

*FTC v. Indiana Fed'n of Dentists,* 476 U.S. 447, 454 (1986) (citation omitted); *see also FTC v. Brown Shoe Co.,* 384 U.S. 316, 320-21 (1966) ("[T]he Commission has broad powers to declare trade practices unfair.  This . . . power . . . is particularly well established with regard to trade practices which conflict with the basic policies of the Sherman and Clayton Acts even though such practices may not actually violate these laws."); *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972) ("[L]egislative and judicial authorities alike convince us that the Federal Trade Commission does not arrogate excessive power to itself if . . . it . . . considers public values beyond simply those enshrined in the letter or encompassed in the spirit of the antitrust laws.").

    *A.  Section 5 of the FTC Act and Sherman Act Principles*

Despite the Defendants' studied silence regarding the Sherman Act, Section 5 is not simply an echo of the Clayton Act but prohibits conduct that violates the principles of both the Clayton and Sherman Acts.  *See, e.g., Indiana Fed'n of Dentists*, 476 U.S. at 466 (stating that the Commission's findings were sufficient as a matter of law to establish a violation of Section 1 of the Sherman Act, and, hence, Section 5).

Section 1 of the Sherman Act prohibits "[e]very contract . . . in restraint of trade or commerce among the several States . . . ." 15 U.S.C. § 1.  The FTC's allegation that the Asset Purchase Agreement violates Section 5, Redacted Complaint ¶ 51, is based in part on the principles of Section 1 of the Sherman Act, principles the Commission enforces through its Section 5 authority.  *See Indiana Fed'n of Dentists*, 476 U.S. at 466.  Sherman Act cases generally name all parties to an allegedly illegal agreement.  *See, e.g.*, Complaint, *U.S. v. VISA U.S.A. Inc.*, No. 98-7076 (S.D.N.Y. Oct. 7, 1998), http://www.justice.gov/atr/cases/f1900/1973.htm.  ITW is a seller under the agreement and has

agreed to accept $650 million from Graco.[1]  ITWF, which directly holds the assets being sold, is also a seller.[2]  Under Sherman Act principles incorporated in Section 5 of the FTC Act, the ITW Defendants are alleged "law violators" – to use Graco's terminology – in the same manner and to the same extent as Graco and are properly and fairly named as defendants.

Further, it is well established that an acquisition, no less than any other agreement, may violate Section 1 of the Sherman Act.  *See U.S. v. Rockford Mem'l Corp.*, 898 F.2d 1278, 1281-82 (7th Cir. 1990) ("We doubt whether there is a substantive difference today between the standard for judging the lawfulness of a merger challenged under [S]ection 1 of the Sherman Act and the standard for judging the same merger . . . under [S]ection 7 of the Clayton Act . . . . [T]he interpretations have, after three quarters of a century, converged." (citations omitted)).  As with Sherman Act challenges to other types of allegedly anticompetitive agreements, Sherman Act challenges to allegedly anticompetitive acquisitions routinely and properly name all parties to the agreement.  *See, e.g., id.* at 1278.  Challenges to anticompetitive acquisitions under Section 5 of the FTC Act properly do the same.

    B.   *Section 5 of the FTC Act and Clayton Act Principles*

Section 5 also incorporates the principles of the Clayton Act.  Although the Clayton Act by its terms prohibits only anticompetitive acquisitions, the FTC Act, which incorporates the principles but not the language of the Clayton Act, is not limited by statutory restrictions on Section 7's reach.  *See, e.g., U. S. v. Am. Bldg. Maint. Indus.,* 422 U.S. 271, 279 n.7 (1975)

---

[1] Asset Purchase Agreement art. 1 and § 3.1, Ex. 1.  In addition, ITW is the sole ITW entity with authority to terminate the agreement, § 9.1(a), (c); the $20 million penalty if the transaction does not close is payable to ITW, § 9.1(c); and all notices under the agreement go to ITW (not ITWF), § 9.4.  The agreement was signed by Jane Warner in her capacity as ITW's Executive Vice-President and as President of ITWF.  Ex. 1.

[2] Asset Purchase Agreement art. 1 (definition of "U.S. Seller"), Ex.1.

(citations omitted));[3] *Yamaha Motor Co. v. FTC,* 657 F.2d 971, 982-83 (8th Cir. 1981) ("We find it unnecessary to decide on this petition whether a seller, as opposed to a buyer, of stock can ever be in violation of Section 7.  For the [FTC] . . . is content to let the finding as to [the seller] rest solely on Section 5.").[4]  The question of a seller's liability in acquisitions challenged under the FTC Act arises rarely, but when it has, courts have recognized that the seller is a proper party.

The Commission has consistently held that sellers are proper defendants in a merger challenge under Section 5.[5]  For example, in *Dean Foods Co.,* D-8674, 1966 FTC LEXIS 32, at *305-07 (Nov. 14, 1966), the Commission held:

> Since mergers which have the requisite effect upon competition are in violation of Section 7, it necessarily follows that an agreement to effect such a merger must conflict with the basic policies of the Clayton Act and therefore is in violation of Section 5 of the Federal Trade Commission Act. . . . [I]n proper circumstances the application of the law to the acquired corporation would effectuate rather than circumvent or conflict with the public policy sought to be effectuated by Congress in enacting the Section.  Accordingly, we believe that Section 5 is the proper statute under which to charge an acquired corporation where the acquisition substantially lessens competition.

---

[3] "The Federal Trade Commission has held that [acquisitions of partnership assets not then covered by the Clayton Act] may be challenged under [Section] 5 of the [FTC] Act, which forbids unfair methods of competition on the part of persons and partnerships, as well as corporations.  It is, of course, well established that the Commission has broad power to apply [Section] 5 to reach transactions which violate the standards of the Clayton Act, although technically not subject to the Act's prohibitions." *Am. Bldg. Maint. Indus.,* 422 U.S. at 279 n.7

[4] The Defendants distinguish *Yamaha* on the grounds that it involved a joint venture.  But nothing in *Yamaha*'s analysis depended on Yamaha's ongoing participation in the venture. *Yamaha* stands clearly for the proposition that the selling party to an anticompetitive transaction can be held liable under Section 5.

[5] The FTC's interpretation of a statute it enforces and of its powers under that statute are entitled to deference from the courts.  *See Am. Fin. Servs. Ass'n. v. FTC,* 767 F.2d 957, 968 (D.C. Cir. 1985) ("The Supreme Court has made clear . . . that in reviewing an agency's construction of a statute which it administers, courts must give deference to the agency's interpretation"); *see also FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 385 (1965) ("This Court has frequently stated that the Commission's judgment is to be given great weight by reviewing courts.").

*See also Chicago Bridge & Iron Co.*, D-9300, 2005 FTC LEXIS 215, at *8 n.23 (Jan. 6, 2005), *aff'd*, 534 F.3d 410 (5th Cir. 2008) ("[A] seller's participation in an unlawful transaction may violate Section 5 of the FTC Act."). Under the Clayton Act principles incorporated in Section 7, the ITW Defendants are alleged "law violators" in the same manner and to the same extent as Graco, and they are as properly defendants in this action.[6]

Virtually all of the preliminary injunction merger actions the FTC has filed since Congress enacted Section 13(b) name both the seller and buyer as defendants.[7] Challenges to

---

[6] The FTC also brings this case directly under the Clayton Act. The Defendants concede that the courts have held sellers to be proper parties in Clayton Act cases because they may be important for effective relief. *See, e.g., U.S. v. E. I. du Pont de Nemours*, 353 U.S. 586, 608 (1957) ("It seems appropriate that [the non-acquiring parties] be retained as parties pending determination by the District Court of the relief to be granted."); *U.S. v. Phillips Petroleum Co.*, 367 F. Supp. 1226, 1261 (C.D. Cal. 1973) ("Tidewater contends that it, as the seller of the acquired assets, is not a proper subject of a suit under [Section] 7. This contention must be rejected."). This precedent establishes, in response to the Court's question, that the ITW Defendants are proper parties to the FTC's Clayton Section 7 claim.

Defendants try to escape this settled principle of law by arguing that it would be unfair to base jurisdiction and venue solely on the stipulation of a party whose main role in the proceeding relates to relief. This argument, like the Joint Brief, ignores the role of Sherman Act principles in the Complaint; under those principles, the ITW Defendants are "law violators" just like Graco for the alleged violation.

In relying on *Crenshaw v. Antokol*, 287 F. Supp. 2d 37 (D.D.C. 2003), the Defendants again ignore that the ITW Defendants are parties to an allegedly illegal acquisition agreement. In *Crenshaw*, only two of fifteen defendants had offices in the district, and these offices were not involved in the conduct at issue. *Crenshaw*, 287 F. Supp. 2d at 43. Here, by contrast, two of three defendants – both signatories to and participants in the challenged acquisition – have consented to jurisdiction in the District and, by operation of 28 U.S.C. § 1391(c)(2), therefore reside in the District. The effects of the transaction will reverberate in the District as well. Also, the *Crenshaw* decision arose under RICO, which establishes a jurisdictional analysis meaningfully different from that of Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the statute relevant here.

[7] The FTC's practice appears to have been different before that date, when most of its challenges were to consummated transactions in which the seller had no further role. Today, the FTC usually names the seller even in a challenge to a consummated transaction if the seller remains in existence. *E.g., Chicago Bridge & Iron Co.*, 2005 FTC LEXIS 215 (Jan. 6, 2005).

5

unconsummated acquisitions brought under the Clayton Act by the Justice Department, although it lacks the benefit of the expanded scope of Section 5 to bring in sellers, now also routinely name both the seller and the buyer.  *See, e.g.*, Complaint, *U.S. v. H&R Block*, No. 11-00948 (D.D.C. May 23, 2011), http://www.justice.gov/atr/cases/f271500/271579.htm.[8]

### C.  The ITW Defendants are Proper Parties

As necessary actors, the ITW Defendants are a critical part of this case.  If ITW refused to sell, there would be no acquisition to challenge.  The effects alleged in the Complaint result from this agreement: "[t]he acquisition will eliminate both price and non-price competition between Graco and ITW and increase the merged entity's market power . . . ."  Redacted Complaint, ¶ 40.  Further, the agreement obligates ITW to refrain from competing against Graco in the "Finishing Business" for five years after the transaction closes.  Asset Purchase Agreement Ex. 1 ¶ 6.2(g) at 49.  This non-compete provision imposes a separate, ongoing obligation on ITW post-closing, circumscribing its business behavior with adverse effects on competition.

## II. The ITW Defendants are Bound by Their Stipulation to Personal Jurisdiction and Venue

Despite the Defendants' astonishing denial, "ITW's" stipulation to personal jurisdiction estops both ITW and ITWF from arguing that the Court lacks personal jurisdiction.  Ex. 2 at 4.  Thus venue is also proper here as to both ITW Defendants pursuant to 28 U.S.C. § 1391(c)(2) and 15 U.S.C. § 53(b).

---

[8]  The private merger cases cited in the Joint Brief are inapposite.  All involved consummated mergers and sought damages.  The sellers had completed their participation in the transfer of assets, and, as they were not acquirers, under the language of Section 7 could not be liable for damages.

The reading of the stipulation the ITW Defendants now advance is wholly incompatible with the letter in which the stipulation appears. Throughout that letter, ITW counsel repeatedly used "ITW" to refer to a number of different ITW entities, including ITWF:

° The first sentence says, "I am writing to respond to the letter I received from you on October 11, 2011, in reference to Illinois Tool Works' ("ITW's") privilege log and production in response to the Second Request that **ITW received** in Federal Trade Commission ("FTC") File No. 111-0169." Letter from L. Breed to R. Friedman (Oct. 13, 2011), Ex. 2 at 1. (emphasis added). The Second Request issued to, and therefore was received by, ITW Finishing LLC; this use of "ITW" refers to ITWF.

° The letter refers the FTC to "ITW's P&Ls," then designates document number ranges for divisions of ITW Finishing LLC. Ex. 2 at 2.

° Addressing Specification 11 of the Second Request, the letter directs the FTC to "the agreements that ITW has with its distributors" and indicates document number ranges of these agreements; the specified ranges contain agreements between distributors and various divisions and brands of ITWF. Ex. 2 at 3.

It is at the end that the letter states, "ITW stipulates that it agrees to accept service of process, and to subject itself to personal jurisdiction, in all federal districts within the United States." Ex. 2 at 4. The ITW Defendants offer no basis for giving "ITW" a narrower meaning in the stipulation than elsewhere in the letter – because there is none.

The ITW Defendants authored the stipulation in response to a request for jurisdictional information in the FTC's Request for Additional Information ("Second Request"), a form of compulsory process. The FTC defined "ITW Finishing LLC" and "the Company" to include not only ITWF but also all of its domestic and foreign parents, treating ITW and all of the numerous relevant ITW entities as one. *See* Second Request, Excerpt with Cover and Definitions at 1, 11, Ex. 3.

Consistent with that definition, throughout the investigation both the FTC and the ITW Defendants used the term "ITW," whether formally defined as "Illinois Tool Works, Inc." or as "ITW Finishing LLC," to refer interchangeably and inclusively to ITW, Inc., ITW Finishing

7

LLC, and a plethora of other ITW divisions and brands without ITW in their name. *See, e.g.*, Letter from Phillip L. Broyles to Logan Breed (July 20, 2011) (expressly abbreviating "Illinois Tool Works Finishing LLC" as "ITW"), Ex. 4 at 1; Excerpt from FTC Investigational Hearing transcript, Ex. 5 at 5 (ITWF employee testifies she works for "ITW").  Until the FTC investigational hearing on December 5, throughout its discussions and correspondence with the FTC, counsel for the ITW Defendants represented that they spoke at all times for all of the ITW entities together, without distinction.

"Stipulations of fact bind the court and parties." *U.S. ex rel. Miller v. Bill Harbert Int'l Constr.*, 608 F.3d 871, 889 (D.C. Cir. 2010) (citing *Gander v. Livoti*, 250 F.3d 606, 609 (8th Cir. 2001)); *see also FDIC v. St. Paul Fire and Marine Ins. Co.*, 942 F.2d 1032, 1038 (6th Cir. 1991) ("Stipulations voluntarily entered by the parties are binding . . . .  Stipulations serve the purpose of conserving judicial resources and allowing the parties to focus on truly disputed issues."). That the ITW Defendants wish to renege on their stipulation does not alter its validity.  The ITW Defendants got the benefit of their bargain: both were able to forego a full response to the Second Request and avoided jurisdictional discovery in FTC investigational hearings.  "Having obtained certain benefits from the stipulation, [the stipulating parties are] estopped from revoking it . . . ." *Barbour v. Medlantic Mgmt. Corp.*, 952 F. Supp. 857, 861 n.3 (D.D.C. 1997).

The FTC relied on the stipulation as inclusive of both ITW Defendants throughout the subsequent investigation.  Stipulations like this are common in merger review, and in merger review, as at trials, "[e]veryone benefits when parties agree to make stipulations." *St. Paul Fire and Marine*, 942 F.2d at 1038.  Stipulations made in good faith help keep merger investigations manageable and reduce expenditures of time and money by all.

Allowing the ITW Defendants to renege on their stipulation will harm merging parties in the future. If the Government can no longer rely on a party's express and well-advised stipulations in response to Second Requests, the Government may have to require parties to respond to every specification, even if a subject is willing to concede a particular issue in order to conserve its resources.

> III. The Court Should Grant Jurisdictional Discovery Before Dismissing or Transferring this Case

The Commission is entitled to jurisdictional discovery of all parties before this case is dismissed or transferred. The FTC made the necessary timely showing regarding Graco by, e.g., supplying links to a Graco website aimed at the distribution of relevant Graco products into the district. *See, e.g.*, http://www.graco.com/Internet/T_PDB.nsf/SearchView/AirProAutomatic (Graco website advertising relevant products and directing customers anywhere in the U.S., including D.C., to a Graco distributor). The Court may take judicial notice of websites. Fed. R. Ev. 201(b); *Seifert v. Winter*, 555 F. Supp. 2d 3, 11 n.5 (D.D.C. 2008). Because the ITW Defendants have not separately moved for dismissal or transfer, the FTC has not offered evidence of their distribution into the district, but it is prepared to do so should the Court so request.[9]

The Defendants concede that they sell some relevant products here, but explicitly omit the D.C. sales they make through their independent distributors. Graco's Reply Brief at 4; Ex. 1 to Joint Brief. But its sales to a distributor may be relevant to personal jurisdiction over the supplier, depending on the degree of the supplier's oversight and participation in the distributor's

---

[9] Interestingly, the ITW Defendants have still not filed a motion to dismiss or transfer. They "joined" Graco's motion, but apparently not on their own behalf but solely in support of Graco. Even now, although they now deny jurisdiction here, they have not moved for their own dismissal or that the case be transferred.

work.  *See, e.g., Fiat Motor Co. v. Alabama Imported Cars, Inc.*, 292 F.2d 745, 746-47 (D.C. Cir. 1961).  A sample Graco distribution agreement provides for just the types of ongoing supervision and monitoring of the distributor's promotional and sales operations that have been held to warrant exercise of personal jurisdiction over a supplier in the past.  Graco distribution agreement, Ex. 6*; see, e.g., Fiat*, 292 F.2d at 746-47.  Graco elsewhere admits that it distributes its products primarily through independent distributors,[10] so including its distributors' sales in D.C. would likely demonstrate a much higher volume of business than it has admitted to date.  ITWF distributes through independent dealers as well.  As held in the decision on which Graco primarily relies, if a party "demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."  *GTE New Media Svcs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000).

## CONCLUSION

For the reasons set forth above, the Commission respectfully requests that this Court deny Graco's motion to dismiss or transfer this case.

January 13, 2012                                          Respectfully submitted,

                                                          By:
                                                                      /s/

                                                          PHILLIP L. BROYLES
                                                            Assistant Director
                                                          PETER RICHMAN
                                                          MARC W. SCHNEIDER
                                                          REBECCA P. DICK (D.C. Bar No. 463197)
                                                          BRIAN J. TELPNER (D.C. Bar No. 462812)
                                                          ROBERT FRIEDMAN
                                                          AMANDA HAMILTON (D.C. Bar No. 499646)

---

[10]  Graco 10-K Report, filed Feb. 22, 2011, at 3 ("Our equipment is sold primarily through third-party distributors with approximately 30,000 outlets worldwide."), http://www.sec.gov/Archives/edgar/data/42888/000095012311016366/c63146e10vk.htm.

CATHLIN TULLY
ANNA CHEHTOVA
JEFFREY OLIVER
JESSICA S. DRAKE
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-2805

Richard A. Feinstein (D.C. Bar No. 324848)
Director
Norman A. Armstrong, Jr. (D.C. Bar No. 459621)
Deputy Director
Federal Trade Commission
Bureau of Competition

Willard K. Tom (D.C. Bar No. 297564)
General Counsel
Federal Trade Commission

*Attorneys for the Plaintiff*

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the 13th day of January 2012, I served the attached on the following counsel by electronic mail (PDF):

>Katrina Robson
>O'Melveny & Myers LLP
>1625 Eye Street, NW
>Washington, DC  20006
>KRobson@omm.com
>
>Counsel for Defendant Graco Inc.

>          /s/
>―――――――――――――――
>Amanda Hamilton (DCBN 499646)
>Counsel for Plaintiff
>Federal Trade Commission