1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
2    -------------------------X
     FEDERAL TRADE COMMISSION,      Docket No. CV 11-2239
3                      Plaintiff,

4           v.                      Washington, D.C.
                                    **January 5, 2012**
5                                   4:15 p.m.

6    GRACO, INC., ILLINOIS TOOL
     WORKS, INC., ITW FINISHING, LLC,
7                      Defendants.
     -------------------------X
8
                          *MOTION HEARING*
9          *BEFORE THE HONORABLE ROBERT L. WILKINS*
                *UNITED STATES DISTRICT JUDGE*
10

11   APPEARANCES:

12   For the Plaintiff:    FEDERAL TRADE COMMISSION
                            Bureau of Competition, Mergers III
13                         By:  Mr. Phillip L. Broyles
                                Mr. Peter Richman
14                              Ms. Rebecca P. Dick
                                Mr. Andrew Kushner
15                         600 Pennsylvania Avenue, N.W.
                           Mail Drop 8026
16                         Washington, D.C.  20580
                           202.326.2805
17                         *pbroyles@ftc.gov*
                           *ahamilton1@ftc.gov*
18                         *prichman@ftc.gov*
                           *rdick@ftc.gov*
19                         *akushner@ftc.gov*

20   For the Defendant:    O'MELVENY & MYERS, LLP
     GRACO, INC.           By:  Mr. Richard G. Parker
21                              Ms. Katrina M. Robson
                           1625 Eye Street, N.W.
22                         Washington, D.C.  20006
                           202.383.5380
23                         *rparker@omm.com*
                           *krobson@omm.com*
24

25

```
 1   APPEARANCES:  (CONT'D.)

 2   For the Defendant:     HOGAN LOVELLS US LLP
     ILLINOIS TOOL WORKS    By:  Mr. J. Robert Robertson
 3   ITW FINISHING               Mr. Logan M. Breed
                            Columbia Square
 4                          555 Thirteenth Street, N.W.
                            Washington, D.C.  20004
 5                          202.637.5774
                            robby.robertson@hoganlovells.com
 6                          logan.breed@hoganlovells.com

 7   Court Reporter:        Catalina Kerr, RPR, CRR
                            U.S. District Courthouse
 8                          Room 6509
                            Washington, D.C.  20001
 9                          202.354.3258
                            catykerr@msn.com

10

11   Proceedings recorded by mechanical stenography, transcript

12   produced by computer.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                     P-R-O-C-E-E-D-I-N-G-S

 2             (4:10 P.M.; OPEN COURT.)

 3             THE COURT:  Good afternoon.

 4             THE DEPUTY CLERK:  Civil Case No. 11-2239, Federal

 5    Trade Commission versus Graco, Incorporated, et al.  Counsel,

 6    will you please come forward and each identify yourselves for

 7    the record, please.

 8             MR. BROYLES:  Your Honor, Phillip Broyles, counsel

 9    for Plaintiff, Federal Trade Commission.

10             THE COURT:  Good afternoon, Mr. Broyles.

11             MR. PARKER:  Richard Parker, Your Honor, counsel for

12    Graco.

13             THE COURT:  Good afternoon, Mr. Parker.

14             MR. PARKER:  Good afternoon.

15             MR. ROBERTSON:  Good afternoon, Your Honor.  Robbie

16    Robertson on behalf of Illinois Tool Works, Inc. and ITW

17    Finishing, LLC.

18             THE COURT:  All right.  Good afternoon,

19    Mr. Robertson.

20             I wanted to have a hearing expeditiously on the

21    motions to dismiss by the Defendants based on lack of personal

22    jurisdiction and lack of venue because obviously if those

23    motions had merit and were to be granted, that would

24    drastically affect the continuing proceedings in this case, so

25    I want to try to resolve those motions as quickly as possible.
```

1    So what I'd like to do, I'd like to handle a couple

2  of housekeeping matters first.  There have been some documents

3  that have been filed under seal with respect to this motion,

4  some exhibits and some of the argument itself.  I'll confess

5  that I -- I've read the sealed pleadings and I haven't

6  compared for myself so that I feel like I'm vassaled with what

7  you consider to be confidential and what you haven't, and I

8  don't want to reveal any material that should be remain

9  sealed.

10    But I also intend to conduct this proceeding as much

11  as possible and hopefully in its entirety pretty much on the

12  record -- on the public record so that the public and all of

13  those assembled can hear and understand the argument.

14    So what I'd like for you to do, I guess, if you

15  could just do a couple of things.  One, is just inform me of

16  the parameters of what it is that is sensitive information so

17  that I make sure myself that I won't disclose any of it in my

18  questioning or comments to all of you; and secondly, ask

19  you-all to proceed in such a manner that you can make your

20  argument publicly.  If there is something that you need to

21  refer to, that you can do so by referring to it generally

22  without having to come to the bench and do a bench conference,

23  it's put under seal or whatever, I prefer that you do that.

24  If it's absolutely necessary for us to do that, then I guess

25  by all means we'll have to do that because I want you to be

1    able to present your arguments.

2           But that's the way that I would like to proceed,

3    just as a housekeeping matter.  If there's an objection to

4    that or if you have a suggestion as to a better way to handle

5    it, I'm happy to hear from you.  But if there isn't, then I'd

6    like to, I guess, get the guidance from the parties, I guess,

7    particularly the Defendants since it's your information as to

8    what your concerns are.

9           MR. PARKER:  Your Honor, Richard Parker.  The

10   concerns are actually quite narrow.  Excuse me.  And we will

11   be able to conduct our arguments without referring to the

12   information.

13          There's really two broad areas.  One would be our

14   sales information, specific sales information, which is

15   confidential.  I don't need to refer to that specifically.

16   And second, the identity of the witnesses supporting the

17   Federal Trade Commission complaint are confidential and I most

18   certainly would not intend to mention any names or identify

19   them in any way during my presentation.

20          THE COURT:  There is a letter that was attached as

21   an exhibit to the opposition that was filed under seal, a

22   letter from counsel.

23          MR. PARKER:  I believe that's Mr. Robertson's

24   letter.

25          MR. ROBERTSON:  Yes, Your Honor.  That was a

1   response from our side, and it contains a lot of other

2   information that really isn't relevant to this proceeding and

3   I won't be mentioning any of the confidential information.  It

4   was a response to a long list of interrogatories.

5            THE COURT:  Well, there is a argument that there is

6   a representation made in the letter that affects how I should

7   resolve this case, and I guess that's specifically what -- I

8   wanted to know whether there -- I can't recall whether that

9   was redacted in the public filings, but my bottom line is, can

10  I talk about what that representation was in open court?

11           MR. ROBERTSON:  I believe that is one sentence on

12  page 4 of the letter, Your Honor, which is not -- that in

13  itself is not confidential.

14           THE COURT:  All right.  That's what I had hoped, but

15  I wanted --

16           MR. ROBERTSON:  If I'm mistaken, Mr. Broyles can

17  correct me, but I think --

18           MR. BROYLES:  Yeah, that's right.

19           MR. ROBERTSON:  I think that is correct.

20           THE COURT:  All right.  So -- okay.  With that,

21  Mr. Boiles -- Broyles, I'm sorry.

22           MR. BROYLES:  Broyles.  Your Honor, there are two --

23  two or three slides that we're going to present and show you

24  that contain confidential information from the Defendants.  I

25  can refer to them generally, but will need to -- will need to

 1   black the screens out so that that information isn't shown

 2   with the audience.

 3           THE COURT:  All right.  Well, I think that my clerk

 4   can put it just so that it's on my screen.  I think that that

 5   can be done.  If it goes on any of the other screens, it can

 6   be seen by the audience because your screens face towards the

 7   audience, or if -- I don't know if you have -- can do it the

 8   old-fashioned way, whether you've got printouts I can look at,

 9   too.

10           MR. BROYLES:  Actually, we may have printouts.

11           We do, Your Honor.

12           THE COURT:  All right.  So that may be the easiest

13   way to do it.

14           Well, let's go ahead with argument on the motion.

15   I'd like to -- I think I understand the issues.  I've read

16   your papers.  I've read the major cases.  I've got a fair idea

17   of where I want to go with this, but I want to hear from you.

18   What I guess I'd like to do is try to keep this to about 15 to

19   20 minutes per side, and I'll let -- let the Defendants, of

20   course, proceed first, and I don't know whether you're both

21   going to argue or one of you is going to argue.

22           MR. ROBERTSON:  No, Your Honor.  Mr. Parker is going

23   to argue the motion, but if there's a question Your Honor has,

24   I am here to step up and answer that.

25           THE COURT:  All right.  Thank you, sir.

1      So I'll hear from you, Mr. Parker.

2      MR. PARKER:  Thank you, Your Honor, and thank you

3 very much for the expedited hearing and for your attention to

4 the confidential information.

5      Your Honor, the issue here is whether the FTC can

6 sue Graco irrespective of venue.  I do not read their papers

7 as seriously contesting the proposition that my client Graco

8 does not do business in this district.  They have a conclusory

9 allegation in their complaint that we transact business.  No

10 facts.  They haven't introduced any evidence.  We have -- I

11 don't believe they're seriously contesting that we transact

12 business here, and I don't believe we do.

13      What they're saying, Your Honor, is, is that Section

14 13(b) has two sections that are relevant here, one having to

15 do with venue and one having to do with Nationwide service.

16      THE COURT:  You said 13(b).  You mean 53(b)?

17      MR. PARKER:  Yes.  I'm sorry, the 53(b), 13(b), I'll

18 call it 53(b), yes, sir.  And they're suggesting that the

19 second provision providing for Nationwide service in fact

20 confers Nationwide jurisdiction so long as there's contacts

21 with the United States, and we most certainly have contacts

22 with the United States.  There's no question about that.  But

23 that they can then bootstrap their way into venue in

24 Washington, D.C.

25      Your Honor, the governing principle that applies to

1   that statutory analysis has already been decided by this

2   circuit in the *GTE/BellSouth* matter.  It is true that that

3   case concerns Section 12 of the Clayton Act, which by the way

4   is also relevant here, but the statutory setup is virtually

5   identical in which there is a venue provision and then a

6   Nationwide service provision, and what the panel of the D.C.

7   Circuit held in 2000 was that the Nationwide service only

8   applies where there is venue, and here, there is none.

9            Yes, sir.

10           THE COURT:  Understood.  I want to cut to the chase.

11           MR. PARKER:  Right.

12           THE COURT:  I don't believe in unnecessary suspense

13   here.  I'm inclined to agree with you as far as the

14   interpretation of that statute, 15 U.S.C. Section 53(b), but I

15   have a problem.  My problem is that your co-defendant, counsel

16   for your co-defendant sent a letter with the language that

17   we've discussed.

18           MR. PARKER:  Yes, sir.

19           THE COURT:  Where they stipulated to personal

20   jurisdiction in any district of the United States.  If I say

21   that they are bound by that stipulation, then by stipulating

22   that there is personal jurisdiction in any judicial district,

23   then they have stipulated that there is personal jurisdiction

24   before me in this judicial district.

25           And if they have stipulated to that, then doesn't

1  that mean that they reside here for the purposes of that

2  statute and for the purposes of Section 1391?  And if they

3  reside here, if the two ITW Defendants reside here, then isn't

4  that the end of story because even if I accept your

5  interpretation of 15 U.S.C. 53(b) under that second sentence,

6  the sentence that begins with "in addition the Court may, if

7  the Court determines that the interest of justice require that

8  any other person or corporation," et cetera, "be a party," and

9  that would be your client, Graco, then if in the interest of

10  justice Graco needs to be a client, even though Graco hasn't

11  consented to jurisdiction and even if I find that there's no

12  personal jurisdiction of Graco here in the District of

13  Columbia, doesn't that provision provide that I should find

14  that venue is proper for Graco here and that the case stays

15  here?

16         MR. PARKER:  I absolutely understand what you're

17  saying, and let me go back through the statute and respond.

18         The answer to your question, I respectfully submit,

19  is null, and let's start with 53(b) or what is referred to

20  sometimes in our paper as 13(b).

21         Move down to the statute where it says, Section (b)

22  as in "bravo," temporary restraining orders, preliminary

23  injunction.  (Reading)  Whenever the Commission has reason to

24  believe that any person, partnership or corporation is

25  violating or is about to violate any provision of law enforced

1    by the Federal Trade Commission, then they can file suit.

2           We are the violators.  Turn, if you would, to

3    Section 7 of the Clayton Act, and I can pass that up if you'd

4    like.  It's helpful.  I wish I would have brought another

5    copy.  I'm sorry, but this is the --

6           THE COURT:  I may have it here.  That's -- what

7    you're calling Section 7 is what's the U.S. code?

8           MR. PARKER:  15 U.S.C. Section 18.  15, Section 18.

9           THE COURT:  All right.  I've got it here.

10          MR. PARKER:  Okay.  Now, it says -- start with the

11   first sentence.  (Reading)  No person engaged in commerce or

12   in any activity affecting commerce shall acquire directly or

13   indirectly assets, et cetera, which is what we're doing.

14          Who's acquiring the assets?  Answer:  My client.

15   Only my client.  Okay.  The statute prohibits acquiring, and

16   then at the last clause says where it tends to substantially

17   lessen competition.

18          So the claim in this case, which we believe is, is

19   incorrect and want a hearing to demonstrate that to the Court,

20   is that we, Graco, are violating the law by acquiring their

21   assets.  We are the law violator.

22          Your Honor, I'm not even sure why they're in this

23   case.  It is no violation of the law for them to sell us

24   assets.  It is a violation of the law for us to buy them if it

25   causes the anticompetitive effects that the Government say it

1    does.  And so when you move Section 7 back into 13(b), you see

2    that the only thing that matters is jurisdiction over us,

3    Graco, which doesn't exist here.

4            And then I think the phrase that you -- that you

5    refer to quite properly would allow them to bring ITW in if

6    for some reason they think they need to be here, but to do it

7    the other way around, to get venue over the law violator, I'm

8    certainly not suggesting we're violating the law.  The alleged

9    law violator, by bringing them in, I think, has the statute

10   backwards and I don't believe there's any authority for it at

11   all.  I'm not aware of any authority at all for that.

12           I understand the statutory point, absolutely, but I

13   don't think it works under this statute at the end of the day

14   and it's backward, and I think it would work an injustice

15   because this case is all about us.

16           It's all about -- this case will be about -- about

17   Graco.  It's going to be about our expanding our product

18   lines, and we're going to say that we're expanding our product

19   lines to make us more competitive internationally and around

20   the world and to be pro-competitive, create jobs, and they're

21   saying that we are going to -- that the effect of this is

22   going to be anticompetitive.  It's going to be all about what

23   post-merger Graco is going to look like.

24           Are we going to be a behemoth that doesn't have to

25   compete or are we going to be a more competitive company in a

```
1   competitive market, which we would be prepared to show.

2           So my point here is, is that they get into court

3   when somebody is about to violate the law, and if anybody is

4   violating the law here, it's Graco, not ITW.  I wouldn't even

5   contend they're a necessary party.  I don't know why they're

6   here.  As much as I like working with Mr. Robertson, I don't

7   see any -- any reason for them to be here at all.  They're

8   surplusage.  And then to use that, turn it around and get

9   venue, otherwise inappropriate against -- against the company

10  that this -- that this case is all about, I think, turns

11  everything upside down.

12          THE COURT:  But the fact of the matter is you

13  haven't moved, or I guess I should say ITW hasn't moved for

14  dismissal because of misjoinder or that they're improperly

15  before this court.

16          MR. PARKER:  I assume that has to do with we don't

17  want to concede jurisdiction, we want to get this -- this

18  ironed out as the first motion, order of business.  But I will

19  say they have not violated the law or not about to violate the

20  law.  If anybody is, it's us, and we're going to show you that

21  they're wrong about that, but it's us, it's Graco.  This case

22  is all about Graco.

23          THE COURT:  Well, do you have any authority for your

24  argument that I'm supposed to look beyond the people on, you

25  know, the back end of the "V," so to speak, the Defendants
```

1    that have been named in this case and only really say, "Oh,

2    the only real Defendant here is Graco"?  And that's the way

3    that I should construe Section 53(b)?

4         MR. PARKER:  Your Honor, I will say the statute

5    means that on its face, but there is authority.  And I thought

6    about -- this was not an argument raised by them, and I

7    thought about this, and there is some cases that point out

8    that the District -- excuse me -- that the parties selling is

9    not the law violator.

10        So what I'm saying, first of all, first and foremost

11   I'm relying on the plain meaning of the statute, but second,

12   we did not put this in our brief because they didn't raise the

13   argument, *U.S. versus Blue Bell,* 1975 CCH Trade cases,

14   paragraph 60, 155.  I can -- I can -- we can write these down

15   and e-mail them to your clerk or send them to your clerk

16   afterward if that's helpful.  And *U.S. versus Phillips*

17   *Petroleum,* 367 F.Supp. 1226, in particular at page 1262, says

18   the same thing.  And finally, the other case that I was able

19   to find was *U.S. versus Pabst Brewing Company,* 183 F.Supp.

20   220.

21        Those are the cases we have, and these authorities

22   establish that no claim exists as to the seller, and to join

23   it, it would be perverse to call somehow on the powers of

24   equity in the statute to deprive us of the venue we're

25   entitled to by relying on somebody who really doesn't have any

business in this lawsuit and isn't violating the law and

doesn't fit within the statutory definition that empowers them

to bring this case.  That would be -- that's what those cases

stand for, and I also would say that the statute, on its face,

supports what I just said.

THE COURT:  Let me also, I guess, ask you this.  The

*GTE* case from the D.C. Circuit.

MR. PARKER:  Yes.

THE COURT:  That is -- seems to be the principal

case that you're relying upon.

MR. PARKER:  Yes.

THE COURT:  The statutory -- the statute was written

differently in that case.

MR. PARKER:  Yes.

THE COURT:  In the sense it uses this phrase "in any

such case."

MR. PARKER:  Right.

THE COURT:  And it's not a separate sentence --

MR. PARKER:  Right.

THE COURT:  -- like it is here.  It's separated by

semicolon.  Why shouldn't I find that that grammatical and

sentence formulation matters here and therefore that by

authorizing Nationwide service of process, Congress knew

exactly what they were doing, and when you combine that with

Federal Rule of Civil Procedure 4(k)(1), that that means that

1   Graco resides in any judicial district?

2          MR. PARKER:  Right.

3          THE COURT:  And therefore, under 1391, Graco can be

4   sued here?

5          MR. PARKER:  Okay.  The opinion in *GTE,* you're quite

6   right, does make a lot out of the "in such cases" language.

7   But let's go back, if we could, Your Honor, to 53(b) or 13(b),

8   and there is a -- similar language here.

9          13(b) -- Section 12 says "in such cases."  I would

10  look at the last sentence of 13(b) that says "in any suit

11  under this section," and I think that "under this section" is

12  an analogy.  Is -- means the same thing as "in such cases,"

13  which means that the *BellSouth* opinion, that if this was in

14  front of the D.C. Circuit, I would expect that that would be

15  the language they would focus on to reach precisely the same

16  result as was reached in the -- in the *GTE/BellSouth* case.

17         So, 12 says "in such cases"; last sentence here says

18  "in any suit under this section".  I believe that the two are

19  fundamentally the same.

20         I would also say that if Congress somehow intended

21  to make the venue provisions superfluous, it would be, A,

22  surprising, but B, even more surprising if they didn't say

23  what they were doing and why they were doing it and there

24  certainly isn't anything like that in a juris prudence

25  hearing, nothing.  It's a two-part statute, and all we're

1   trying to do is fulfill the two parts, Part A and Part B,

2   apply both parts.

3          THE COURT:  All right.  I interrupted your

4   presentation with questions, but I'd like for you to, I guess,

5   just wrap up in the next couple of minutes.

6          MR. PARKER:  I'll wrap up very quickly.  And under

7   1404, I just want to make a point about a hearing here.  The

8   Government says that, well, the witness location doesn't

9   matter because there's not going to be an evidentiary hearing.

10          What we're saying, Your Honor, is this, this

11   transaction is the most important event in the history of this

12   client.  No. 1, very important.  It allows us to expand, to

13   become more competitive, and the only day that we're going to

14   get in court is in federal court, in a preliminary injunction

15   hearing because the trial in the administrative court doesn't

16   start till May 15.

17          We're not going to get a ruling from the ALJ until

18   about this time next year if past is prologue, and then we got

19   to go to the Commission, and as a practical matter, you can't

20   hold a deal together that long.

21          First of all, they have the right to walk on

22   April 1, and second of all, even if we didn't, it's very hard

23   for parties to hang out there this long.  We did this deal in

24   April of last year, and we're still trying to get it, and to

25   hold this thing out for another 18 months after this isn't

1   going to work.

2          This is our day in court, and we respectfully would

3   request an evidentiary hearing here, and that's why the

4   1404(a) factors are present, and we've cited in our brief that

5   most of the judges who have considered this realized that this

6   is -- this is the ballgame.  This is the whole ballgame for us

7   and do grant an evidentiary -- Mr. Robertson and I were in one

8   two years ago at this time with Judge Collyer for nine days.

9   When I sat at that side of the table, we did one in front of

10  Judge Sporkin for two mergers for seven weeks.  I'm not

11  suggesting that's appropriate, but Judge Hogan has had two

12  five-day hearings.

13          THE COURT:  Thank you.

14          (LAUGHTER.)

15          MR. PARKER:  I'm just making a point.  That what I'm

16  saying is, is that this deal cannot survive.  You can't expect

17  it to survive an ALJ hearing, and so this is our only shot,

18  and what I want to do, Your Honor, is bring in our CEO, bring

19  in some customers, bring in people from the marketplace and

20  put them on the stand and explain why this is pro-competitive.

21          And I've got nothing but respect for this agency,

22  but we have a rather massive difference of opinion on this --

23  on this case and why I think they've got it wrong and this --

24  this -- this merger is pro-competitive and good for the United

25  States.

1          THE COURT:  All right.  Thank you.

2          MR. PARKER:  Unless Your Honor has anymore

3   questions, I'll take my seat.

4          MR. ROBERTSON:  Your Honor, can I just have 20

5   seconds to clarify a question that you raised?

6          THE COURT:  Certainly.

7          MR. ROBERTSON:  And Your Honor did, I think, read

8   correctly from the letter that we sent, Mr. Breed sent, and

9   you've seen a copy of that.  Illinois Tool Works is the parent

10  company, Illinois Tool Works, Inc. that happens to own about

11  848 other companies or business units that do lots of

12  different things, and so when Your Honor mentioned "in the

13  interest of justice," they do not transact business in any of

14  the businesses that are at issue in this case in this District

15  at all.

16          What they do transact business in are things that

17  are unrelated to this case, Vulcan stoves, Wolf stoves, nails,

18  things like that that you see at Home Depot.  They have

19  nothing to do with this case.  They're from other business

20  units that happen to be owned by Illinois Tool Works, Inc.  So

21  I just want to make sure that was very clear.

22          I couldn't say that we didn't transact business from

23  the holding company, from the parent company, Illinois Tool

24  Works, Inc. because it has so many companies, we actually do,

25  but it doesn't have any meaningful connection with this

1    District at all.

2         Does that help clarify, Your Honor?

3         THE COURT:  Somewhat, but I guess the -- the key

4    issue here if I'm able to pull up your complaint here, but the

5    parties, the Defendant parties are ITW Finishing; is that

6    right?  And there is -- what's -- which parties do you

7    represent?

8         MR. ROBERTSON:  I represent Illinois Tool Works,

9    Inc., which is the parent, ultimate parent -- which was the

10   ultimate parents or the Hart Scott Rodino forum which is what

11   started this whole process.  Down way down the food chain in

12   that is ITW Finishing, LLC, which is also a defendant.  I

13   represent them, too.  They are a sub -- several subs down

14   below the parent company.

15        That company, ITW Finishing, LLC, does not transact

16   business in this District.  I can tell you exactly what they

17   did.  In the last two years, they sold about $300.  $300 out

18   of the many, many millions, hundreds of millions of dollars of

19   transactions in this District only because someone was

20   repainting the Apple Store in Georgetown and needed a spray

21   gun.  There were two spray guns that were sold over the last

22   two years.  Related to this case, that's what Illinois -- ITW

23   Finishing, LLC has done in this District, about $300.

24        ITW Inc., because it does all this other stuff, it

25   has nothing to do with this case, I cannot say they do not

1    transact business in this District.  I just don't believe that

2    at the end of the day, either in the interest of the justice,

3    which comes under the jurisdictional point, or whether there's

4    a meaningful connection with this District, comes under

5    1404(a) which is what Judge Howell focused on in the *Block*

6    case just recently, that under either of those tests that this

7    case should be here.

8           And I agree with Mr. Parker, I don't want to be here

9    either.  My client does not want to be here.  We're letting

10   them -- it's their case.  All the witnesses are theirs, and I

11   think they're right, they ought to win, but we would prefer

12   not to be here.

13          THE COURT:  Understood.

14          MR. ROBERTSON:  Thank you, Your Honor.

15          THE COURT:  Thank you.

16          All right.  Mr. Broyles, I'll hear from you.

17          MR. BROYLES:  Thank you, Your Honor.

18          First of all, let me address directly the question

19   that you put to Mr. Parker about the section -- the language

20   in 53(b) that allows you to add somebody else if venue is not

21   proper, if we've got a proper action here.

22          Mr. Parker represented that Graco is the violator

23   and that ITW is not here.  What Mr. Parker was focusing on,

24   though, was on the fact that this action is brought under

25   Section 7.  What he neglected to tell you, it's also brought

1  for a violation of Section 5 of the FTC Act.  Section 5 of the

2  FTC Act provides that the agreement to merge, the agreement to

3  sell and the agreement to buy is a violation of law, and that

4  means that ITW entered into that agreement in violation of

5  Section 5.  So they are properly here as a defendant and a

6  defendant who has already consented to the jurisdiction of

7  this court.

8           Now, the cases that Mr. Parker cited to you all had

9  one thing in common.  They were not brought by the FTC.  They

10  were not brought to address violations of Section 5.  Okay.

11  So they were brought to violation -- they were brought to

12  address violations of Section 5 or the Sherman Act, I'm not

13  sure, I have to go back and look at the cases, but they were

14  not brought on the same basis that this case is brought to

15  you, okay.

16           So, ITW is properly a defendant and they are

17  properly here.  They have consented to jurisdiction.  Okay.

18           Now --

19           THE COURT:  Do you have any cases that you can cite

20  to me in support of that proposition?

21           MR. BROYLES:  In support of --

22           THE COURT:  That ITW is a proper Defendant under

23  Section 5 of the FTC Act?

24           MR. BROYLES:  We will find those cases, Your Honor,

25  and get those to you, okay.

1          THE COURT:  I would suggest to you that it's

2     critical for you to find those cases.

3          MR. BROYLES:  Okay.  All right.

4          Let me also turn directly to the issue here, and

5     that is, the issue as to whether or not venue is proper with

6     respect to Graco.  And I would submit to you, Your Honor, that

7     the only way Graco can win on that issue is if you conclude

8     that Congress did not mean what it said when it passed Section

9     13(b), when it enacted that statute.

10          That section, please, that section provides venue

11     wherever Graco resides, where it transacts business, or

12     wherever venue is appropriate under 1391.  The case that

13     Mr. Parker relies upon, *GTE Services* rejected an effort by the

14     plaintiff -- rejected an effort by the plaintiff to invoke

15     1391 as a basis for venue because Section 12 does not include

16     that language.  Section 13(b) does include that language.

17          1391(b) tells us that venue is proper in any

18     district, in any judicial district where the defendant

19     resides, and for a corporate defendant, 1391(c) says they

20     reside anywhere they are subject to personal jurisdiction.

21     And so the Nationwide service of process allows us to serve

22     them here and gives this court jurisdiction and that gives

23     this court venue.

24          THE COURT:  But doesn't that construction of the

25     statute basically read out that entire sentence, that any suit

1   may be brought where such person, partnership or corporation

2   resides or transacts business?

3         MR. BROYLES:  No, Your Honor.  Because what

4   that's —— what that language sets out is three alternative

5   basis —— bases for establishing venue.  We can sue them where

6   they reside, we can sue them where they transact business, or

7   we can sue them wherever venue is proper.  It's not a —— you

8   don't have to meet all of them.  You have to meet one of those

9   three in order to establish venue.

10        Venue is appropriate here because they reside in the

11   District because of the Nationwide service of product —— of

12   process.  That's what Congress enacted and that's what

13   Congress meant and that's the way it's been interpreted.

14        I would submit to you also that in the —— in the

15   *Cephalon* case, that they —— that are cited by both of us in

16   our briefs, the court, in deciding —— in trying to determine

17   whether or not it could transfer the case or to transfer ——

18   the District had to determine whether or not that case could

19   be transferred to the Eastern District of Pennsylvania.  It

20   specifically referred to 1391 as a venue provision that

21   provided one of the alternative bases to sue —— to transfer

22   that case to the Eastern District of Pennsylvania.  We do not

23   have to meet all three of them.

24        If you have to meet all three of them, that word

25   "or" is meaningless.  It doesn't say "and."  It doesn't say

1    "resides and transacts business and wherever venue is

2    appropriate," it says "or."  That tells us that we have to

3    meet one of those three alternatives, and venue is appropriate

4    here under 1391.

5         Now, what the *GTE* court said was, what you have to

6    do is look at what they refer to as the before the colon

7    language which is the language that says where you can sue,

8    and again, Section 12 of the FTC Act says where it's an

9    inhabitant but also in any district where it may be found or

10   transacts business.

11        And so the court appropriately said you can't use

12   1391 because it's not there.  It's not in that language of the

13   statute.  Contrast that with 13(b) where that language is

14   there, and in order to find that we do not have venue here,

15   you have to read that language out of the statute.

16        THE COURT:  I guess I'm not following you, or maybe

17   I just disagree with you, but if your argument -- if we go

18   back to the language in what you call Section 13(b), the

19   Circuit made pretty clear in the *GTE* case that you weren't

20   allowed to bootstrap, to use a colloquial term, you can't use

21   the Nationwide service of process provision as your bootstrap

22   to get venue.  You have to determine whether venue is

23   appropriate first under the first part of that section in the

24   Clayton Act, and I would submit to you that you're not going

25   to convince me that you can use the last sentence of Section

1  53(b) or 13(b) of the FTC Act to the Nationwide service of

2  process language there as a way to bootstrap venue, so to

3  speak.  That's the fundamental problem that I have.

4            MR. BROYLES:  Okay.  Your Honor --

5            THE COURT:  So -- so if that's the case, just to

6  kind of cut to the chase here, you're not going to be able to

7  convince me otherwise, okay.  So if that's the case, how do

8  you still win?  Or how do you still defeat their motion?

9            MR. BROYLES:  Your Honor, first of all, we think

10  that they do transact business here and we'd like an

11  opportunity to conduct discovery on that, okay.

12            But I also, I think that the language in Section

13  53(b) that you refer to, allows us, after having venue and

14  jurisdiction over ITW, to add Graco to this action.  You can,

15  in the interest of justice.

16            But, Your Honor, you don't need to add them.  We

17  don't need them.  If Graco -- if venue is improper here

18  against Graco, you can dismiss this -- dismiss them from this

19  action.  An injunction barring ITW from selling their assets

20  to Graco is just as effective as an injunction telling Graco

21  that they cannot buy.

22            So -- but we think, Your Honor, that 1391 clearly

23  establishes venue here.  We think that what the court in *GTE*

24  said was that you can't use the second part of the Section 12,

25  the language after the semicolon, to bootstrap -- to establish

1    venue in that -- in a Clayton Act action because the language

2    of the Clayton Act above the colon lay out two -- lay out

3    three bases for establishing venue which didn't include that.

4          The statute in 53 -- in 13(b) is dramatically

5    different.  The "above the colon" language, where the court --

6    where the Congress tells us that we can sue includes that

7    language in 1391.

8          And let me -- there is some language that I wanted

9    to read to you from the legislative history that went into

10   this section.  It's what Senator Gorton, who is a ranking

11   Republican member of the Consumer Subcommittee, said about

12   this section when it was introduced.  What he said is the

13   expanded venue provision, which is based in part on 28 U.S.C.

14   1391, the general -- the general venue provision will permit

15   the FTC to bring defendants scattered throughout the country

16   to justice in a single forum.  This promotes judicial economy

17   and will help the FTC save precious resources for law

18   enforcement.

19         Congress specifically intended to provide, they

20   didn't want us chasing around the country to figure out where

21   we could sue when they passed 1391.

22         THE COURT:  I understand that, and I did my own

23   looking at the legislative history and have the committee

24   reports here and have read even the testimony of the FTC

25   chairperson who testified back in 1993 on this amendment when

1   it was introduced in the House, but my reading of all that

2   legislative history is that what Congress intended to do, to

3   the extent that we even go to it because I think that the

4   plain meaning is such that we don't go to the legislative

5   history, but to the extent that we do, they wanted to provide

6   us a mechanism whereby if you had proper venue and

7   jurisdiction over one defendant and you needed to, you know,

8   add others, then you could add others, and it didn't matter at

9   that point with respect to personal jurisdiction or venue.

10          They just wanted the FTC to be able to sue all of

11  them in one place, but that you weren't somehow opening the

12  floodgates, and I don't see anything in the legislative

13  history that suggests that Congress said, well, you can just

14  sue anybody anywhere in any district in the nation because

15  we're authorizing national service of process in any -- so you

16  can sue any defendant in any judicial district.

17          MR. BROYLES:  Well, we can't sue any defendant.  We

18  can sue any -- under its terms, 1391 applies only to

19  corporations.  It does not apply -- and that was

20  specifically -- that allows us to bring corporate defendants

21  into any court.  We can't bring individual people into any

22  court.  There we have to meet where they reside or where they

23  transact business.

24          THE COURT:  So you're saying that the fact that

25  1391(c) is the provision that says that corporations reside

 1    wherever they can be served, basically.

 2              MR. BROYLES:  Yes, Your Honor.  And that is what the

 3    court in *Cephalon* said when it found that venue was proper in

 4    the transferee district in the case to which it transferred,

 5    that it was specifically 1391(c) that provided venue.

 6              They also said -- they also -- to be honest, to be

 7    fair with you, they also said they transact business in that

 8    district, but there were alternative bases for venue in that

 9    district.  1391(c) was specifically referenced as a basis for

10    venue.

11              THE COURT:  Suppose I disagree with you that these

12    Defendants transact business in the District of Columbia?

13              MR. BROYLES:  I think the plain reading of the

14    statute, which again says that -- suggests that we only have

15    to meet one of those, not all of them.  That's the only -- the

16    only way to interpret the "or" in that statute, in that

17    language.  We have to show that they either reside here or

18    that they transact business here or that venue is proper under

19    1391, and 1391(c) says that they reside here and venue is

20    proper here.

21              THE COURT:  But they only reside here if I agree

22    with you that I can use that last sentence in Section 13(b) --

23              MR. BROYLES:  The Nationwide service of process.

24              THE COURT:  The Nationwide service of process.

25              MR. BROYLES:  That's correct, Your Honor.

1        THE COURT:  That, in effect, that the reading of the

2   *GTE* case doesn't preclude me from using that sentence in the

3   manner that you're addressing.

4        MR. BROYLES:  That's correct, because what the *GTE*

5   court said was in the venue section of that statute, there was

6   no reference to allow them to bring 1391 into it.  The

7   defendant -- that was -- that was an alternative basis that

8   the plaintiff sought to establish venue in that court, in that

9   case.  The court rejected that, and appropriately so, because

10  as you can see, that language is not in Section 12.  It is in

11  Section 13 and it is an alternative basis for venue and it

12  establishes a venue in this case as proper.

13       THE COURT:  All right.  I'll let you wrap up.  I

14  know I've interrupted your argument.

15       MR. BROYLES:  That's okay, Your Honor.

16       Your Honor, I wanted to go to the question of the

17  hearing and the question of the convenience.  And Mr. Parker's

18  argument, I think, ignores what the nature of this proceeding

19  is.  This is a preliminary injunction, which by local rule is

20  done normally on the papers and it's done without live

21  testimony whenever possible.

22       But the nature of a 13(b) action is particularly

23  suitable for a hearing without live witnesses because of the

24  standard that we have to meet in order to obtain a preliminary

25  injunction.

1        Standard is that we -- what you have to determine is

2   whether we have raised serious and substantial and difficult

3   questions that basically entitle us to have a trial, and

4   that's what was -- that's what the D.C. Circuit said in the

5   *Heinz* case and what it said from quoting a long-standing

6   decision in *FTC/Foods.*

7        This is not a merits trial, irrespective of the

8   Defendant's efforts to impose that obligation on you.  What

9   this court has said is that you're not -- you're not

10  authorized to determine whether or not they've actually

11  violated the antitrust laws.  That function is vested in the

12  FTC in the first instance, and what a federal judge in the

13  *Whole Foods* -- an appellate court judge in *Whole Foods* says

14  that you do not need to take detailed evidence of the

15  anticompetitive effects.  We just have to meet the 13(b)

16  standard, which is that we've raised questions.

17       It's essentially almost a summary judgment standard.

18  We just have to demonstrate that we've raised questions going

19  to the illegality of this transaction and they have to

20  demonstrate that there are no serious and substantial

21  questions.

22       I would submit to you that there are certainly some

23  serious and substantial questions in this case where -- and

24  this is the part that is -- that I need to have blacked out.

25            COURT REPORTER:  I am getting a noise now, Judge.

1        (PAUSE.)

2        THE COURT:  Well, do you have it in hard copy?

3        MR. BROYLES:  Yes, we have it in hard copy.

4        THE COURT:  If you could hand that up.

5        MR. BROYLES:  Now, I would submit to you that we've

6   raised a serious question where this is -- this is a

7   document -- this is an e-mail written by Graco's CEO to a

8   member of their board of directors in a moment of candor, when

9   he's not trying to convince this court or trying to convince

10  the Commission to pass on his deal, and he said in the

11  highlighted portion what he said about this transaction, and

12  if you turn to the next page, he goes even further in the

13  highlighted portion in the bottom.

14       Okay.  And so what you have to determine is whether

15  we've raised a serious and substantial question in light of

16  comments like that.  You also have to determine that in light

17  of -- the next page, you turn to the next page where their

18  internal business documents posit market shares were far in

19  excess of those declared presumptively illegal by the supreme

20  court in the *Philadelphia National Bank* case.  And on the next

21  page where they make more comments about this -- about this

22  market and about -- and particularly about entry into this

23  market.

24       This case is particularly suitable for hearing on

25  the papers.  There's no need to bring live witnesses in.

1    Other courts, other judges in this court and in other district

2    courts have decided 13(b) cases.

3            And this part we can go public on it.

4            These are some cases that were decided without live

5    testimony.  Even among the cases that Defendants have cited

6    where there were live -- there was live witnesses, there was a

7    mixture of live witnesses and witnesses by deposition.  You

8    have a wide range of discretion as to how you want to conduct

9    this trial.  In *Whole Foods,* for example, only experts

10   testified.  13 other witnesses testified by designation of

11   hearing transcripts, some 22 others testified by deposition

12   transcripts, others testified through their declarations.  You

13   have a wide -- you have wide discretion in how you formulate

14   this hearing to help you determine whether or not we've raised

15   those serious and substantial questions.

16           If Graco were seriously concerned about the

17   convenience of the witnesses, they wouldn't insist upon

18   hauling them either to Washington or to Minnesota because

19   they're going to have to come to Washington anyway to testify

20   in an administrative proceeding that is already under way.

21   The Defendants have already noticed some more than 30

22   depositions in this case.  They have already served discovery

23   on us in that case.  That matter is proceeding.  If they

24   decide that they don't want to go through that, through with

25   that, that's on them.  That's a private equity.

1          And Congress has already made the determination that

2     the public interest in preserving competition and preserving

3     the Commission's ability to achieve effective remedy, that

4     they're willing to risk them walking away in order to preserve

5     and protect that public interest.  The public interest

6     outweighs their interest in holding it still together.

7          So, again, Your Honor, I would conclude by saying I

8     think venue is clear under 1391 under the clear and plain

9     reading of that statute.  I think that there is no reason to

10    transfer this case to Minnesota.  The only party that benefits

11    is Graco.  It doesn't benefit any of the witnesses.  And as

12    Judge Howell said in *U.S. versus H&R Block* just last summer,

13    that's not a basis for transferring this case to another

14    district.

15         Thank you, Your Honor.

16         THE COURT:  All right.

17         MR. PARKER:  Your Honor, if I could have a few

18    minutes.  Given your comments on the statute, I'm not going to

19    spend a lot of time on that, except to say what you have just

20    heard is a huge and unauthorized exercise of Government power.

21    What they are saying is, if there is a tugboat captain who has

22    a family corporation in Alaska and buys a boat and catches

23    their eye, they can drag that captain here for trial.  He's

24    never been 100 miles out of Anchorage in his life.  That is a

25    huge proposition of law that I don't ever remember these

1    people making.  And I was there and I sure never made it.

2             It's unfair and it's not justified by that statute.

3    The *Cephalon* -- Judge, *Cephalon* is a Philadelphia company.

4    Under *Cephalon,* let's go to Minnesota.  We're a Minnesota

5    company.  Then Mr. Broyles tells, well, we don't need a trial;

6    what I've got is an e-mail and all I got to do is show you

7    this e-mail and you can decide the substantial question.  So

8    the tugboat captain gets dragged in here, they show him two

9    e-mails, they can't buy the boat.  That is really unfair.

10            Now, if you look at these hearings under this same

11   standard in this court, Judge Hogan, two five-day hearings;

12   Judge Sporkin, seven-week hearing; two years ago, Judge

13   Collyer applying this same standard, nine-day hearing, not a

14   50-, 60-, 70-page opinion.  Judge, these people are deciding

15   this case because they know what the reality is.

16            The reality is, is that administrative trial means

17   nothing, nothing, absolutely zero because you can't keep

18   a deal -- maybe if you're Exxon Mobil some day who's

19   self-financed, but any average company such as my client can't

20   do it.  And what they're arguing for is an absolute government

21   overreach of power by overreading that statute in a way that I

22   never heard them do it before and by telling you all you got

23   to do is read two e-mails and a couple of market share

24   documents relating to documents -- relating to markets that

25   aren't markets under the antitrust law that say, well, there

1  are substantial questions, go to an administrative trial and

2  we say, no, we can't.

3         This is a very important decision, Your Honor.  This

4  is very important to my client, and I think what is fair and

5  what is -- is authorized by the statute is to say that there

6  is no jurisdiction or venue here and that this case ought to

7  go to Minnesota and we will go to Minnesota and we will move

8  this case forward very, very, very quickly.  Thank you.

9         THE COURT:  All right.  Thank you.  What I'm going

10  to do, I apologize for the lateness of the hour, is going to

11  take a ten-minute recess so that I can determine how I want to

12  proceed and come back out and let you know how I'm going to

13  proceed.  So we'll take ten minutes.

14         THE DEPUTY CLERK:  All rise.

15         (A BRIEF RECESS WAS TAKEN.)

16         THE DEPUTY CLERK:  All rise.  This honorable court

17  is back in session.  Please be seated and come to order.

18         THE COURT:  All right.  Here is how I'd like for us

19  to proceed at this point so that I can give you an expeditious

20  ruling on this motion.

21         I would like to have the parties brief the following

22  two issues.  The first is:  Are the two ITW parties,

23  Defendants, proper parties to this action?

24         And the second:  Is there any reason why this court

25  cannot rely upon the letter written by counsel for ITC [sic]

1    as estopping them from arguing that this court lacks personal

2    jurisdiction over them?

3              And I want a brief from the Defendants within one

4    week from today -- close of business, one week from today, no

5    more than 10 pages.  10 means 10.  No motions for more pages

6    will be granted.  And one week after that -- Well, actually,

7    in the interest of time -- Let me just look at my calendar

8    here.

9              But today is the 5th, so I would like to get -- I'm

10   going to compress this a little bit.  So Defendants, I'd like

11   to get your submission by the 10th; any response from the FTC

12   by the 13th; and any reply by close of business on the

13   16th.  I know that the 16th is a holiday, but -- actually

14   the close of business the 17th then, and my intention will

15   be to get you a ruling before the end of the week of that

16   week.

17             All right.  Is there anything else?

18             MR. PARKER:  Nothing from Defendants, Your Honor.

19             MR. BROYLES:  Nothing from Plaintiffs, Your Honor.

20             THE COURT:  All right.  Thank you.

21             (PROCEEDINGS END AT 5:30 P.M.)

22                            *-*-*-*-*

23

24

25

1

2

3

4

5

6

7

8                        **CERTIFICATE OF REPORTER**

9              I, Catalina Kerr, certify that the foregoing is a

10   correct transcript from the record of proceedings in the

11   above-entitled matter.

12

13

14   _____   _____

     Catalina Kerr                       Date

15

16

17

18

19

20

21

22

23

24

25